125 P.3d 536

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Roger Fredrick WIGGINTON,
Defendant–Appellant.**

No. 30137.

Court of Appeals of Idaho.

Sept. 9, 2005.

Review Denied Dec. 23, 2005.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Carol L. Chaffee, Deputy Attorney General, Boise, for respondent. Carol L. Chaffee argued.

LANSING, Judge.

Roger Fredrick Wigginton was convicted of trafficking in methamphetamine by attempted manufacturing. On appeal, Wigginton contends that the district court erred by denying his motion to suppress evidence that, Wigginton contends, was obtained as a result of an illegal extension of a traffic stop. We affirm.

## I.

### BACKGROUND

Late one January night, Idaho State Trooper Michael Lininger observed a vehicle cross over the highway centerline about three times. He also noticed that on straight stretches of the road, the vehicle's brake lights would come on for no apparent reason. Suspecting that the driver was under the influence, Lininger initiated a traffic stop. As the vehicle pulled onto the shoulder of the road it hit a rock, which flattened a front tire. On making contact with the driver, Wigginton, the trooper noticed that Wigginton's eyes were bloodshot and that there was an overwhelming odor of alcohol coming from inside the vehicle. When asked about the strong odor, Wigginton's passenger, Lonna Short, explained that someone had previously spilled a beer on the vehicle's floorboard and that the odor was enhanced whenever the heater was running. Both Wigginton and Short denied drinking alcohol that night.

Trooper Lininger wanted to conduct field sobriety tests on Wigginton, but was experiencing problems with the headlights of his patrol vehicle. Concerned with safety on the dark roadway, he radioed another officer for assistance. Sergeant Guy Cordle of the St. Maries Police Department responded shortly thereafter accompanied by Sadie, a certified drug detection canine. At some point before Cordle arrived, Lininger was made aware that Cordle had an interest in Wigginton, believing him to be a user and dealer of methamphetamine.

Upon Cordle's arrival, Lininger conducted a number of field sobriety tests. Wigginton performed all of the tests satisfactorily, leading Lininger to conclude that Wigginton was not driving while impaired. Lininger then informed Wigginton that the officers were going to search the vehicle because, based on the strong odor coming from the car, they had probable cause to believe there was an open container of alcohol inside. Before the officers began searching the passenger compartment, Sergeant Cordle walked his dog around the vehicle, a procedure that took about two minutes. Lininger and Cordle then searched the vehicle's interior and discovered ingredients and equipment commonly used in manufacturing methamphetamine. Apparently, at some point Cordle informed Lininger that Sadie had alerted on the driver side door. Wigginton and Short were arrested on suspicion of attempted manufacturing of a controlled substance. The officers then used information gleaned from the automobile search to secure a search warrant for Wigginton's residence, where they discovered additional evidence of methamphetamine manufacturing.

Wigginton was charged with trafficking in methamphetamine by attempted manufacturing, Idaho Code § 37–2732B(3). He then filed a motion to suppress the evidence found in the vehicle and at his residence, contending that the smell of alcohol alone was insufficient to provide probable cause for the search and that the use of the drug dog illegally extended the length of the stop without reasonable suspicion of drug activity. The district court denied the motion. The case proceeded to trial where a jury found Wigginton guilty of the charged offense. Wigginton now appeals the denial of his suppression motion.

## II.

## ANALYSIS

On appeal, Wigginton contends that the district court erred in denying the suppression motion because the officers had neither reasonable suspicion to continue his detention after the field sobriety tests nor probable cause for a search of the vehicle. Wig-

ginton argues that the field sobriety tests dispelled any suspicion that Wigginton was driving under the influence (DUI) or that there was an open container of alcohol in the vehicle and that the drug sniff by Sadie was an unlawful extension of the traffic stop. Wigginton also contends that neither the odor of alcohol nor Sadie's alleged alert were sufficient to establish probable cause to search the vehicle.

### A. Probable Cause for the Search

■ We first consider whether there was probable cause to search the vehicle for an open container of alcohol after Wigginton passed the sobriety tests. If the officers possessed probable cause to believe that Wigginton's vehicle contained an open container in violation of Idaho Code § 23–505, then the warrantless search was permissible.

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment, but the State may overcome this presumption by demonstrating that a warrantless search fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). One such exception applies when police have probable cause to believe that the automobile contains contraband or evidence of a crime. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991). This "automobile exception" is based upon both the automobile's ready mobility—an exigency sufficient to excuse the warrant requirement where there is probable cause for a search—and the lesser expectation of privacy in an automobile as compared to the privacy interest in a home. *California v. Carney*, 471 U.S. 386, 390–92, 105 S.Ct. 2066, 2068–69, 85 L.Ed.2d 406, 412–13 (1985); *State v. Braendle*, 134 Idaho 173, 175, 997 P.2d 634, 636 (Ct.App.2000). Probable cause for a search is a flexible, commonsense standard—a practical, nontechnical probability that incriminating evidence is present is all that is required. *Texas v.*

*Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 513 (1983).

A number of jurisdictions have held that the smell of alcohol alone or the smell of alcohol in conjunction with other factors is sufficient for probable cause to search a vehicle for an open container. *See, e.g., State v. Peterson,* 407 N.W.2d 221, 223 (S.D.1987) (holding that trooper's detection of the odor of alcohol coming from defendant and the automobile gave trooper probable cause to search passenger compartment for evidence of an open container violation); *State v. Pierce,* 347 N.W.2d 829, 833 (Minn.Ct.App. 1984) (holding that the detection of odors that trained police officers can identify as being illicit, constitutes probable cause to search automobiles for further evidence of crime); *State v. Haibeck,* 685 N.W.2d 512, 518 (N.D.2004) (holding there was probable cause to search for open containers when a smell of alcohol came from the vehicle and a breath test revealed that the occupants had consumed alcohol); *People v. Molina,* 25 Cal. App.4th 1038, 30 Cal.Rptr.2d 805, 807 (1994) (holding that once officers noticed the odor of fresh beer, they had probable cause to believe that an offense was being committed and were entitled to search passenger compartment for open containers of alcohol).

We similarly conclude that the facts known to the officers here provided probable cause to search for evidence of an open container offense. Trooper Lininger detected not merely a noticeable odor of alcohol but an "overwhelming" odor coming from the vehicle. Both occupants denied that they had been drinking, and the field sobriety tests confirmed that Wigginton was not under the influence of alcohol. If, as Wigginton and Short claimed, they had not been drinking alcohol, then the source of the odor had to be something within the vehicle. Short's explanation that the smell was caused by beer that had spilled on an earlier occasion provided a plausible explanation, but the trooper was not obligated to accept her assertion that the spill was not a recent occurrence. Indeed, the fact that Wigginton had just struck a rock when pulling over on the officer's signal suggested a possibility that alcohol could have spilled from a container during that abrupt stop. Wigginton's contention that probable cause was eliminated when he passed the field sobriety tests is without merit, for the test results did not dispel the possibility that he or the passenger was in possession of an open container, even if Wigginton had not consumed its contents to the point of intoxication.

■ Although the suspicion of DUI, which initially motivated the traffic stop, was removed when Wigginton performed satisfactorily on the sobriety test, by that time probable cause for the search had developed. As we have often stated, the justification for the detention of a motorist is not permanently fixed at the moment the traffic stop is initiated. Subsequent observations and events can give rise to legitimate reasons for investigation of criminality differing from that which initially prompted the stop. *State v. Sheldon,* 139 Idaho 980, 984, 88 P.3d 1220, 1224 (Ct.App.2003); *State v. Myers,* 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct.App.1990). Such was the case here.

We do not hold that an odor of alcohol that may be coming from occupants rather than from something else within the vehicle alone is sufficient to justify a search under the automobile exception. Here, however, the odor from the vehicle and additional information pointed to the likelihood of an open container in the vehicle. Cumulatively, these facts gave probable cause for a search.

**B. Extension of the Stop by Use of the Drug Dog**

Wigginton also argues that the approximately two-minute delay in initiating the search for an open container while Officer Cordle walked Sadie around the car constituted an unlawful extension of the traffic stop and that this unjustified prolonging of the detention requires suppression of evidence found in the car.

■ The United States Supreme Court has held that an investigative detention based on reasonable suspicion of criminal activity "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d

229, 238 (1983). *See also State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App. 2002); *State v. Martinez,* 136 Idaho 436, 440–41, 34 P.3d 1119, 1123–24 (Ct.App.2001). Accordingly, this Court has held that a motorist's Fourth Amendment rights are violated if officers lengthen a stop for a traffic violation by using a drug dog to examine the vehicle or by questioning the occupants about drugs in the absence of reasonable suspicion of drug activity.[1] *See State v. Aguirre,* 141 Idaho 560, 563–64, 112 P.3d 848, 851–52 (Ct. App.2005). Wigginton argues that these authorities require suppression in his case because without reasonable suspicion of any drug offense, the officers interrupted and delayed the open container investigation while the drug dog was employed.

We conclude, however, that even if Wigginton's roadside detention was unlawfully lengthened by use of the drug dog, that illegality does not require suppression because this brief extension of the traffic stop did not in any way lead to or facilitate the discovery of the challenged evidence. The exclusionary rule requires the exclusion of evidence only if there is a factual nexus between the illegal conduct of state agents and the evidence sought to be suppressed. *State v. Babb,* 136 Idaho 95, 29 P.3d 406 (Ct.App.2001). As we stated in *Babb:*

> Application of the exclusionary rule to suppress evidence is appropriate only as to evidence that is fruit of the illegal governmental activity. *Segura v. United States,* 468 U.S. 796, 815, 104 S.Ct. 3380, 3390–91, 82 L.Ed.2d 599, 615 (1984); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Bainbridge,* 117 Idaho 245, 249, 787 P.2d 231, 235 (1990); *State v. Hoak,* 107 Idaho 742, 749, 692 P.2d 1174, 1181 (1984). The test is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead

by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455 (quoting MAGUIRE, EVIDENCE OF GUILT, p. 221 (1959)).

*Id.* at 98, 29 P.3d at 409. Although the State has the ultimate burden of persuasion to show that the evidence is untainted, the defendant bears the initial burden of going forward with evidence of a "factual nexus" between the illegality and the evidence. *Id.* See also *United States v. Nava–Ramirez,* 210 F.3d 1128, 1131 (10th Cir.2000); *United States v. Kandik,* 633 F.2d 1334, 1335 (9th Cir.1980). Suppression is required only if "the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." *Nava–Ramirez,* 210 F.3d at 1131.

In Wigginton's case, the requisite factual nexus has not been established. Before the drug dog was employed to sniff the car, the officers already possessed probable cause to search for an open container, and Trooper Lininger had already announced his intention to conduct the search. The interlude with the drug dog only briefly delayed an already justified search, and it cannot be said that the challenged evidence would not have come to light if that delay had not occurred. Therefore even assuming that the delay for use of the drug dog was unlawful, no basis has been shown to suppress the evidence found in Wigginton's vehicle.[2]

Accordingly, the order of the district court denying Wigginton's motion to suppress evidence is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.

---

1. A drug dog sniff is not itself a search and therefore may be conducted during a traffic stop without suspicion of drug activity so long as the employment of the drug dog does not extend the duration of the stop. *Illinois v. Caballes,* 543 U.S. 405, ——, 125 S.Ct. 834, 837, 160 L.Ed.2d 842 (2005).

2. Because evidence indicating an open container violation justified the search, we need not address Wigginton's arguments challenging the foundation for the evidence of the drug dog alert and the sufficiency of that evidence to demonstrate probable cause to search for drugs.