No. 104,115

STATE OF KANSAS, *Appellee*, v. ROBERT G. STEVENSON,
*Appellant*.

(321 P.3d 754)

Opinion filed March 28, 2014.

*Rick Kittel,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Derek Schmidt,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: After stopping Robert Stevenson's sport utility vehicle based upon a turn signal violation, law enforcement officers searched the vehicle because they observed a very strong odor of alcohol emanating from inside the vehicle after Stevenson, the lone occupant, had exited. The search led to the discovery of methamphetamine and the subsequent prosecution of Stevenson for possessing that drug, in violation of K.S.A. 2008 Supp. 65-4160. Stevenson sought to suppress the fruits of the warrantless search, but the district court held that the odor of alcohol inside the vehicle was sufficient to establish probable cause to search the vehicle for an open container of alcohol. In a split decision, a panel of the Court of Appeals affirmed that holding. *State v. Stevenson,* 46 Kan. App. 2d 474, 262 P.3d 689 (2011) (Buser, J., dissenting). This court accepted review of the Court of Appeals' decision; our jurisdiction is pursuant to K.S.A. 20-3018(b) and K.S.A. 22-3602(e). Based upon the totality of circumstances in this particular case, we determine that the search was unlawful.

## FACTUAL AND PROCEDURAL OVERVIEW

On December 19, 2008, at approximately 4 a.m., Detective Jon Gill and Deputy Justin Crafton were watching a house that the officers suspected of drug activity. They had previously stopped vehicles leaving the house and discovered criminal activity. When Stevenson's vehicle left the house, the officers followed it until they observed the vehicle's turn signal engage as it approached a stop sign at the intersection of 14th and Broadway. Detective Gill opined that the turn signal was initiated approximately 15 feet from the intersection, and Deputy Crafton estimated that the distance

was 30 feet. But this court has held that a driver is absolutely liable if he or she fails to continuously signal a turn for 100 feet prior to the turn. *State v. Greever*, 286 Kan. 124, Syl. 8, 9, 184 P.3d 788 (2008). The officers testified that they relied on the 100 feet rule to justify stopping Stevenson's vehicle after targeting it to investigate for drug activity. See 286 Kan. at 142 (Johnson, J., dissenting) (predicting absolute liability 100 feet turn signal rule would be extensively used to legalize profiling selected targets for investigatory detentions).

Deputy Crafton approached the vehicle's driver side, while Detective Gill approached the passenger side. Stevenson was the only occupant of the vehicle. The area of the stop was "fairly lit up" by streetlights. Deputy Crafton noticed a very strong odor of alcohol coming from the open driver's side window and directed Stevenson to exit and proceed to the rear of his vehicle. While the deputy conducted field sobriety tests on Stevenson outside his vehicle, Detective Gill proceeded to the driver's side and "stuck [his] head in the vehicle." Either before or while he was inside the vehicle, the detective also noticed a very strong odor of alcohol, "as if possibly an alcohol container had spilled inside the vehicle." The detective subsequently reiterated that, based upon his law enforcement experience, "[i]t smelled to [him] as if an alcohol container had spilled inside the vehicle. It was a very strong, very strong odor."

The officers determined that Stevenson was not under the influence of alcohol and they permitted him to re-enter his vehicle. A records check indicated that Stevenson's driver's license was valid and clean and that he had no outstanding wants or warrants. Nevertheless, the officers continued the detention because they believed they had probable cause to search Stevenson's vehicle for an open container of alcohol based solely on the odor of alcohol. Specifically, Deputy Crafton testified that he believed that the circumstance was akin to the probable cause definitively created by the odor of marijuana. The officers confirmed at the suppression hearing that they had not observed anything in plain sight that would justify the search and that they had not asked Stevenson for his consent to search his vehicle.

Crafton apparently first looked for an open container inside of the center console of the front seat, where he found two glass pipes containing a crystal-like residue that Crafton suspected was methamphetamine. Then, a digital scale was recovered from the map pouch on the back of the passenger seat. Finally, the deputy noticed a large bottle of red wine on top of the vehicle's backseat. Crafton testified that the lid was on the half-empty bottle but that he could tell that it had been previously opened. He noticed a wet, red liquid on the floorboard right behind the driver's seat that he thought had likely spilled from the wine bottle, albeit the bottle was recovered from the middle of the backseat.

Based on the drug paraphernalia found inside the vehicle, Detective Gill arrested Stevenson and performed a search incident to arrest. That search produced methamphetamine from Stevenson's wallet, for which the State charged Stevenson with possession. Stevenson sought to suppress the methamphetamine as the fruit of an unlawful vehicle search.

First, the district court upheld the initial seizure, finding that Stevenson's failure to signal his intended turn for the requisite 100 feet authorized the officers to effect a traffic stop. The district court then found that both officers smelled a strong odor of alcohol emanating from the interior of Stevenson's vehicle and that the strong odor remained after Stevenson exited the vehicle. The court also noted that the officers had testified that they "believed that perhaps there was alcohol that had been spilled in the interior of the vehicle." Relying heavily upon a Court of Appeals decision, *State v. Bickerstaff*, 26 Kan. App. 2d 423, 988 P.2d 285, *rev. denied* 268 Kan. 849 (1999), the district court ultimately opined that the strong smell of alcohol was enough, standing alone, to give the officers probable cause to search for an open container.

After his motion to suppress was denied, Stevenson waived his right to a jury trial and tried the matter to the bench upon stipulated facts, but preserving the suppression issues for appeal. After finding Stevenson guilty, the trial court sentenced him to 12 months' probation with an underlying prison term of 11 months.

Stevenson appealed his conviction, and a split panel of the Court of Appeals affirmed the district court's denial of Stevenson's mo-

tion to suppress. *State v. Stevenson*, 46 Kan. App. 2d 474, 262 P.3d 689 (2011) (Buser, J., dissenting). The majority held that "the *very strong* odor of alcohol emanating from inside the vehicle, where the sole occupant of the vehicle had been excluded as the source of the odor, constituted probable cause to search the vehicle for open containers of alcohol." 46 Kan. App. 2d at 480. The dissent reasoned that, because alcohol was a legal substance, the very strong odor of alcohol "without incriminating facts or circumstances, did not justify the warrantless search of the automobile to search for open containers of alcohol." 46 Kan. App. 2d at 481 (Buser, J., dissenting).

Stevenson sought, and we granted, review of the Court of Appeals holding that the officers had probable cause to search Stevenson's vehicle.

### PROBABLE CAUSE TO SEARCH A VEHICLE FOR OPEN CONTAINERS OF ALCOHOL

To clarify, the question presented to us for review does not include any issue regarding the initial seizure of Stevenson's vehicle for the traffic infraction. *Cf. State v. Sanchez-Loredo*, 294 Kan. 50, 53-54, 272 P.3d 34 (2012) (clarifying that court would not address issues not cross-appealed by defendant). Likewise, there is no question raised as to whether the search was actually conducted in such a manner that it was more likely to uncover drugs than an open alcohol container. We are only concerned with whether the evidence the officers discovered during the traffic stop—a very strong odor of alcohol emanating from the unoccupied vehicle—gave them probable cause to search the seized vehicle for evidence of another crime—transporting an open container of alcohol.

### *Standard of Review*

"The standard of review for a district court's ruling on a suppression motion is bifurcated, with factual findings reviewed for substantial competent evidence and the legal conclusions reviewed with a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007). If the material facts are not disputed, 'the question of whether to suppress evidence becomes a question of law subject to unlimited review.' *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996)." *State v. Brittingham*, 296 Kan. 597, 601, 294 P.3d 263 (2013).

"The facts in this case are not in dispute." *Stevenson*, 46 Kan. App. 2d at 474. Therefore, our review is unlimited.

*Analysis*

Both our federal and state constitutions protect against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas Constitution Bill of Rights specifically protects Kansans from unwarranted government intrusion: "The right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate."

Where a search has been conducted without first obtaining a warrant from a detached magistrate, our starting point is that the "warrantless search by a police officer is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement." *Sanchez-Loredo*, 294 Kan. at 55. Here, the State relied upon the automobile exception, which is a subclass of the probable-cause-plus-exigent-circumstances exception, whereby the mobility of the vehicle provides the exigent circumstances. If a vehicle is readily mobile and probable cause exists to believe the vehicle contains contraband or evidence of a crime, the Fourth Amendment does not require a warrant for police to search the vehicle. 294 Kan. 50, Syl. 4. But the State bears the burden of proving the lawfulness of the warrantless vehicle search. *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006).

The State's theory was that the strong odor of alcohol coming from within the vehicle provided probable cause to believe that the vehicle contained an open container of alcohol, which the officers apparently believed would be evidence of a crime. The district court recognized that this court has not established a bright-line rule for the odor of alcohol as it previously did for the odor of marijuana. In *State v. MacDonald*, 253 Kan. 320, 324-25, 856 P.2d 116 (1993), upon which Deputy Crafton said he relied, this court held that an officer's detection of the odor of burned marijuana,

standing alone, constituted probable cause to search a vehicle. The rationale for that definitive rule was that, in this state at that time, the smell of marijuana was *always* evidence of illegal activity.

But the district court was also aware of this court's decision in *Ibarra*, which sits at the other end of the probable cause spectrum. *Ibarra* held that the smell of ether emanating from a vehicle was insufficient to provide probable cause to search the vehicle, even where the driver had failed to provide the detaining law enforcement officer with a legitimate explanation for possessing a product that could be used in the illegal production of methamphetamine. 282 Kan. 530, Syl. 3. *Ibarra* opined that "[t]he strong odor of ether emanating from a house or a vehicle is as consistent with lawful activity as it is with criminal activity," and, accordingly, "the smell of ether alone is justification for further investigation but not for a search." 282 Kan. at 543.

The *Ibarra* majority noted that the odor of alcohol was at issue in *Bickerstaff* and described the holding of that case as follows:

"The Court of Appeals concluded that the odor of alcohol from the person and her car *and* the breath test showing she had alcohol in her system *coupled with* her denial of drinking provided the officer with probable cause to conduct a warrantless search of the vehicle for an open container. 26 Kan. App. 2d at 424." *Ibarra*, 282 Kan. at 538.

As the dissent in this case noted, even the lone dissenter in *Ibarra* agreed that " '[t]here is no "standing alone" statement in *Bickerstaff*. The result clearly was not limited to the smell of alcohol.' " *Stevenson*, 46 Kan. App. 2d at 482 (Buser, J., dissenting) (quoting *Ibarra*, 282 Kan. at 558 [Larson, J., dissenting]). Nevertheless, the district court in this case interpreted *Bickerstaff* as permitting a warrantless search based solely upon the smell of alcohol, suggesting that any discussion of the other circumstances would be merely dicta.

But the Court of Appeals majority acknowledged that *Bickerstaff* had not established a bright-line rule that the odor of alcohol in a vehicle, standing alone, was sufficient to establish probable cause to search for an open container. Rather, *Bickerstaff*'s determination of probable cause was based on the "cumulative facts" that the alcohol odor was coming from both the car and the defendant and

that the defendant had denied consuming any alcohol when a breath test indicated otherwise. *Stevenson*, 46 Kan. App. 2d at 477. Moreover, the Court of Appeals majority noted that *Ibarra* had stressed that it was the combination of facts in *Bickerstaff* that had established the probable cause to search in that case. *Stevenson*, 46 Kan. App. 2d at 477-78. The majority then completed its discussion of Kansas cases with *State v. Carson*, No. 101,242, 2009 WL 1591933 (Kan. App. 2009) (unpublished opinion), where the panel found an officer lacked probable cause to search a vehicle despite having smelled the odor of alcohol. *Carson* distinguished *Bickerstaff* by pointing out that the officer in *Carson* could not determine whether there was any alcohol odor coming from the vehicle, independent of the effluvium arising from the defendant; that Carson had admitted to having a couple of drinks, whereas Bickerstaff denied drinking anything; and that the officer in *Carson* testified that he had no reason to suspect any illegal activity once Carson passed the field sobriety tests. *Stevenson*, 46 Kan. App. 2d at 478.

Given that this court has not had an opportunity to directly address facts similar to those presented in this case, the Court of Appeals majority looked to the Idaho Court of Appeals for guidance, finding the decision in *State v. Wigginton*, 142 Idaho 180, 125 P.3d 536 (Ct. App. 2005), *rev. denied* December 23, 2005, to be persuasive. There, a police officer initiated a traffic stop on suspicion that Wigginton was driving under the influence of alcohol because he had crossed the centerline three times and applied his brakes for no apparent reason. As Wigginton pulled his vehicle over to the shoulder, the vehicle hit a rock, which flattened a tire. When the officer contacted Wigginton, he noted that Wigginton's eyes were bloodshot and there was an overwhelming odor of alcohol coming from inside the vehicle. The passenger explained that someone had previously spilled a beer on the vehicle's floorboard and that the odor increased when the heater was running. Both Wigginton and his passenger denied that they had been drinking alcohol. Wigginton satisfactorily performed all field sobriety tests, leading the conducting officer to believe Wigginton was not impaired. Nevertheless, the officers informed Wigginton that they

were proceeding to search his vehicle because they believed that they had probable cause to look for an open container of alcohol based on the overwhelming odor of alcohol coming from the vehicle. Additionally, the officers had a drug dog sniff around the vehicle prior to the search. The opinion does not indicate whether any open container of alcohol was found in the vehicle, but the officers recovered items used to manufacture methamphetamine, leading to a drug prosecution in which Wigginton challenged the lawfulness of the vehicle search.

The Idaho Court of Appeals concluded that the facts known to the officers provided probable cause to search for evidence of an open container violation, relying on the overwhelming odor of alcohol coming from the vehicle, the fact that both vehicle occupants denied drinking, and the fact that the field sobriety tests confirmed that Wigginton had not been drinking. 142 Idaho at 183. The court reasoned that if the vehicle occupants had not been drinking, the odor must have been coming from something within the vehicle. The court found that although the passenger's explanation of a spilled beer was plausible, "the trooper was not obligated to accept her assertion that the spill was not a recent occurrence." 142 Idaho at 183. The court noted that "the fact that Wigginton had just struck a rock when pulling over on the officer's signal suggested a possibility that alcohol could have spilled from a container during an abrupt stop." 142 Idaho at 183. In reaching its conclusion that the stop was supported by probable cause, the Idaho Court of Appeals stated:

"We do not hold that an odor of alcohol that may be coming from occupants rather than from something else within the vehicle alone is sufficient to justify a search under the automobile exception. Here, however, the odor from the vehicle and additional information pointed to the likelihood of an open container in the vehicle. *Cumulatively*, these facts gave probable cause for a search." (Emphasis added.) 142 Idaho at 183.

The Court of Appeals majority was persuaded by *Wigginton* to find that the officers here had sufficient information to establish the requisite probable cause to search Stevenson's vehicle for an open container, reasoning as follows:

"Once Stevenson was removed from the car and it was determined that he was not intoxicated, the clear source of the 'very strong' odor of alcohol was the interior of the car. In fact, it was so strong the officers immediately associated the odor with an open container that had spilled in the vehicle, certainly a fair inference. If the alcohol was being transported legally in an unopened container, it would not have a detectable odor. It was reasonable for the officers to act on their suspicions, rather than ignore evidence which signals a crime. See *State v. Mac-Donald*, 253 Kan. 320, 325, 856 P.2d 116 (1993) (odor of burning marijuana is sufficient by itself to establish probable cause to search a vehicle); *State v. Goff*, 44 Kan. App. 2d 536, 540, 239 P.3d 467 (2010), [*rev. denied* 292 Kan. 967 (2011)] (odor of raw marijuana is sufficient by itself to establish probable cause to search a vehicle).

"Under the totality of the circumstances, we find that under the facts of this case, the *very strong* odor of alcohol emanating from inside the vehicle, when the sole occupant of the vehicle had been excluded as the source of the odor, constituted probable cause to search the vehicle for open containers of alcohol." 46 Kan. App. 2d at 480.

The Court of Appeals dissent challenged the majority's legal reasoning, pointing out that "no Kansas appellate court previously has held that the odor of a *legal substance* may provide the sole basis to justify a warrantless search of an automobile based upon probable cause to believe the vehicle contained contraband or evidence of a crime." (Emphasis added.) 46 Kan. App. 2d at 481 (Buser, J., dissenting). Because alcohol, like ether, is legal to possess in this State, the dissent would have applied *Ibarra* to require more than the strong odor of alcohol emanating from a vehicle to justify a warrantless search. 46 Kan. App. 2d at 481 (Buser, J., dissenting). Moreover, the dissent suggested that the discovery of an open container of alcohol inside the vehicle would not necessarily have established a crime, given that it is possible to legally transport an open container of alcohol, *e.g.*, K.S.A. 2008 Supp. 8-1599 provides an exception allowing the transportation of an open container behind the last upright seat in a vehicle without a trunk. 46 Kan. App. 2d at 485 (Buser, J., dissenting).

The dissent also challenged the majority's assertion that *Wigginton* was factually similar to this case. Wigginton was stopped on suspicion that he was driving under the influence and, after the stop, the officer noted the corroborating fact that Wigginton's eyes were bloodshot. In stark contrast, Detective Gill and Deputy

Crafton stopped Stevenson for failing to activate his turn signal soon enough, as a pretext to investigate whether he was involved in the drug activity they suspected at the house they had staked out. Wigginton and his passenger denied drinking anything and were given the opportunity to explain the overwhelming odor of alcohol inside the vehicle. Here, the State presented absolutely no evidence to even suggest that Stevenson was asked about the origin of the alcoholic odor in his vehicle or whether he was asked if he had recently consumed alcohol. Indeed, the suppression hearing transcript reveals that the officers could not even say whether an odor of alcohol could be detected on Stevenson's person when he was outside of the vehicle. Further, the dissent noted that the *Wigginton* court was influenced by the inference that an open container of alcohol could have just spilled when Wigginton struck the rock that flattened his tire during the traffic stop. In contrast, the record here contains no evidence "leading to the inference that an open container had just spilled or was even inside Stevenson's vehicle." 46 Kan. App. 2d at 484 (Buser, J., dissenting). The dissent also challenged the logic of characterizing Stevenson's sobriety as a factor that contributed to the totality of the circumstances that supported probable cause to search for an open container, because, in *Bickerstaff*, it was the driver's intoxication that was the important factor leading to justifying the search. *Stevenson*, 46 Kan. App. 2d at 486-87. In other words, the dissent opined that the State failed to establish any circumstances, other than odor, from which the officers could reasonably infer that Stevenson was illegally transporting an open container of alcohol.

Moreover, the dissent opined that, akin to what this court said in *Ibarra*, the odor of alcohol only justified the "officers' brief extension of the traffic stop to investigate whether Stevenson was in violation of K.S.A. 2008 Supp. 8-1599 and K.S.A. 2008 Supp. 8-1567 (driving under the influence of alcohol)." *Stevenson*, 46 Kan. App. 2d at 484-85. (Buser, J., dissenting). Yet, the officers apparently failed to conduct even a cursory investigation that surely would have disclosed the large bottle of wine lying in plain view on the backseat of the vehicle. 46 Kan. App. 2d at 486 (Buser, J., dissenting).

The dissent's discussion of extending the traffic stop to investigate the specific crime of violating K.S.A. 2008 Supp. 8-1599 touches on a couple of points. First, the officers relied on a traffic infraction to effect their pretextual stop. See *Whren v. United States*, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (driver's violation of traffic code gives officers probable cause to stop vehicle even if pretext to investigate for drugs). Accordingly, the State had to show why the officers did not simply issue Stevenson a ticket for failing to properly signal a turn and let him go on his way. See *State v. Spagnola*, 295 Kan. 1098, 1104, 289 P.3d 68 (2012) ("The detaining of a driver justified solely for the purpose of issuing a ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that lawful objective."). In order to extend the length of a traffic stop for questioning beyond the initial purpose of the traffic stop, the officers must have possessed "an objectively reasonable and articulable suspicion that illegal activity has occurred" or must have obtained the driver's consent to further questioning. 295 Kan. at 1105. Here, the State does not rely on consent, so the officers had to establish that they reasonably suspected *illegal activity*. After Stevenson passed the field sobriety tests, the only illegal activity that the officers could have suspected was that Stevenson had transported an open container of alcohol between the "drug house" and the intersection where he was stopped. As will be discussed below, that means more than just having alcohol in the car that is susceptible to being smelled from the outside.

Then, the officers' acquisition of reasonable suspicion only entitled them to extend the detention in order to investigate further. In order to conduct a full-fledged search of the automobile, the quality and quantity of information acquired by the officers had to move them up the evidentiary continuum to the point where they had probable cause to believe they would find evidence of a crime in the vehicle. We have stated it this way: " ' "Probable cause" to search a vehicle can be established if the totality of the circumstances indicates there is a "fair probability" that the vehicle contains contraband or evidence [of a crime].' " *State v. Jefferson*, 297 Kan. 1151, 1159, 310 P.3d 331 (2013) (quoting *Sanchez-Loredo*,

294 Kan. at 55). "Contraband" is defined as "[g]oods that are unlawful to import, export, or possess." Black's Law Dictionary 341 (8th ed. 2004). Accordingly, it would not be enough for the officers to believe that there was a fair probability they would find alcohol in Stevenson's vehicle. Rather, they had to reasonably believe that Stevenson had *unlawfully* transported any alcohol that might be found in the vehicle.

The Court of Appeals majority mentions the totality of circumstances and the facts of this case but then appears to formulate a modified bright-line rule: "the *very strong* odor of alcohol emanating from inside the vehicle, when the sole occupant of the vehicle had been excluded as the source of the odor, constituted probable cause to search the vehicle for open containers of alcohol." 46 Kan. App. 2d at 480. We disagree with that statement, both as a rule of law and as applicable under the totality of circumstances in this particular case.

To determine whether there was a fair probability that evidence of the crime of transporting an open container would be found in Stevenson's vehicle, we start by looking at the evidence required to prove the crime. The relevant portions of the only statute that Stevenson is alleged to have violated are as follows:

"(b) No person shall transport in any vehicle upon a highway or street any alcoholic beverage unless such beverage is:

(1) In the original unopened package or container, the seal of which has not been broken and from which the original cap, cork or other means of closure has not been removed;

(2)(A) in the locked rear trunk or rear compartment, or any locked outside compartment which is not accessible to any person in the vehicle while it is in motion; or

(B) if a motor vehicle is not equipped with a trunk, behind the last upright seat or in an area not normally occupied by the driver or a passenger; or

(3) in the exclusive possession of a passenger in a vehicle which is a recreational vehicle, as defined by K.S.A. 75-1212, and amendments thereto, or a bus, as defined by K.S.A. 8-1406, and amendments thereto, who is not in the driving compartment of such vehicle or who is in a portion of such vehicle from which the driver is not directly accessible." K.S.A. 2013 Supp. 8-1599(b).

One first observes that the statute does not prohibit the possession of an open container in a vehicle. The gravamen of the offense

is transporting the alcohol on a highway or street. Moreover, there are a number of exceptions to the prohibition on transporting alcohol. For instance, the officers identified Stevenson's vehicle as a 2001 Chevrolet Blazer, which presumably does not have a trunk, which, in turn, would have allowed Stevenson to legally transport the unsealed wine bottle "behind the last upright seat or in an area not normally occupied by the driver or a passenger." K.S.A. 2013 Supp. 8-1599(b)(2)(B). In that event, the wine bottle would not have been contraband, there would have been no crime upon which to gather evidence, and the Court of Appeals' rule would have permitted a government intrusion to search for evidence of a *lawful* activity.

Perhaps most importantly, both officers opined that the very strong smell suggested to them that alcohol had been spilled inside the vehicle. The district court noted that testimony and the Court of Appeals majority labeled it "a fair inference." *Stevenson*, 46 Kan. App. 2d at 480. Yet, the State did not argue in this case that Stevenson's transportation of the alcohol that had spilled on the floorboard was a violation of K.S.A. 2013 Supp. 8-1599(b); the prosecutor confirmed at oral argument that the State was not contending that the spilled alcohol was illegal. See K.S.A. 2008 Supp. 41-102 (defining "alcoholic liquor" as substances "containing alcohol, spirits, wine or beer and capable of being consumed as a beverage by a human being"). If Stevenson had discarded the leaking wine bottle before being stopped or if the leaking wine bottle had been in a permissible location, the "very strong odor" of alcohol would have remained, notwithstanding there being *no* probability of finding contraband or evidence of a crime within the vehicle.

In *Wigginton,* the Idaho Court of Appeals opined that "[p]robable cause for a search is a flexible common-sense standard—a practical, nontechnical probability that incriminating evidence is present is all that is required." 142 Idaho at 182. Utilizing Kansas common sense, one would intuit that it would be more probable that the very strong odor of alcohol emanating from inside a vehicle indicates a spill (as the officers inferred) rather than a previously opened bottle onto which the lid had been securely reattached. Here, for example, if the wine bottle had not leaked, it is

unlikely the officers would have smelled anything through a capped glass bottle, even if the original seal had been broken. Country common sense would likewise lead one to believe that an intoxicated person would be more likely to have an open container in the vehicle from which he or she had been drinking than a sober person who had passed the field sobriety tests. Here, we know that Stevenson was cleared of driving under the influence, and we do not know whether he even smelled of alcohol.

Moreover, as the Court of Appeals majority recites, the existence of probable cause is to be determined from the totality of the circumstances under which the search occurred. *Stevenson*, 46 Kan. App. 2d at 480. "A review of the *totality* of the circumstances should, as the phrase implies, also include a consideration of the exculpatory factors." *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 660, 256 P.3d 845 (2011) (Johnson, J., dissenting), *disapproved of by Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 290 P.3d 555 (2012); see also *State v. Edgar*, 296 Kan. 513, 525, 294 P.3d 251 (2013) (court must look at whole picture, including favorable results on field sobriety tests). Here, the vehicle was stopped in a well-lit area, and the detective stuck his head into the vehicle without observing any open container. That circumstance contradicts the notion that there would be a fair probability that a search of the vehicle would reveal an open container located in an impermissible part of the vehicle which was the source of the "very strong odor" of alcohol.

In short, the totality of the circumstances in this case only establishes that the officers' observation of a very strong odor of alcohol emanating from within the vehicle, which they suspected to be the result of spilled alcohol, provided them with reasonable suspicion to extend the traffic infraction detention to further investigate whether Stevenson was transporting an open container of alcohol in violation of K.S.A. 2013 Supp. 8-1599. The officers' failure to acquire additional inculpatory facts relating to the crime being investigated before commencing their search of the vehicle rendered the search unreasonable and unlawful.

The Court of Appeals decision affirming the district court is reversed; Stevenson's conviction is reversed; and the matter is re-

manded to the district court for a new trial with the unlawfully seized evidence suppressed.

Reversed and remanded.