NOT DESIGNATED FOR PUBLICATION

No. 121,306

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

SHANE M. BRITTON,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed January 31, 2020. Affirmed.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon S. Crane*, of Hutchinson, for appellee.


Before WARNER, P.J., POWELL, J., and LAHEY, S.J.

PER CURIAM:  In *State v. Follman*, No. 121,308, 2019 WL 6223120 (Kan. App. 2019) (unpublished opinion), this court affirmed the Reno County District Court's order suppressing evidence obtained from Paris Follman's truck following an unreasonable seizure. This case involves a suppression order from the same traffic stop involving Follman's passenger, Shane Britton. For the reasons stated in *Follman*, we affirm.

1

FACTUAL BACKGROUND

This court discussed the circumstances giving rise to the suppression motion at issue here in *Follman*. In the early hours of May 19, 2018, Follman and Britton were driving a rented truck on Highway 50 in rural Reno County. Deputy Mikel Bohringer of the Reno County Sheriff's Department pulled the truck over for speeding. Using tactics he had learned at a two-day highway interdiction seminar, the deputy asked Follman to come to his patrol car while he filled out a traffic warning.

Early in the stop, Deputy Bohringer developed reasonable suspicion the truck might contain drugs. The truck had an Arizona license plate, contained several open food containers but little luggage, and—according to the rental agreement—had been rented for a four-hour period on May 14 (almost five days before) in Rosemead, California. And Follman appeared nervous throughout the encounter.

Deputy Bohringer wrote Follman's information in a notebook and asked her travel questions while transferring her information to the citation form. Fifteen minutes into the stop, he requested a records check, which revealed no outstanding warrants. A few minutes later, the deputy told Follman she could leave, but then asked if she would answer additional questions. The deputy asked if the truck contained drugs and asked if he could search the truck; Follman stated the truck did not contain drugs, and she did not consent to the search. Deputy Bohringer then left to question Britton, who provided answers about his and Follman's travel plans that were inconsistent to Follman's previous answers. The deputy returned and again requested Follman's consent for a search; again, Follman declined.

Thirty minutes into the traffic stop, Deputy Bohringer told Follman she was not free to leave and requested a drug dog. Deputy Colt Pfautz, a canine handler with the Harvey County Sheriff's Office, received Bohringer's request. Deputy Pfautz made the 60-mile trip in 45 minutes, arriving 80 minutes after Deputy Bohringer first stopped

2

Follman's truck. A few minutes later, Pfautz's dog, Odie, indicated the presence of drugs inside the truck. A subsequent search revealed marijuana and methamphetamine.

The State charged Follman and Britton with various drug offenses. The district court granted Britton's motion to suppress the drugs, finding the stop unreasonable. The court found the deputy had reasonable suspicion to extend the initial traffic stop based on, among other things, the rental agreement and Follman's hesitant answers (which conflicted with Britton's responses). But the duration of the detention—as well as several actions by the deputy the court found to be unnecessary and dilatory—rendered the stop and subsequent search unreasonable. The State then filed this interlocutory appeal.

DISCUSSION

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment's Due Process Clause, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010).

Because a routine traffic stop constitutes a seizure, it must be reasonable. *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008). Courts gauge the reasonableness of a traffic stop on its scope and duration. *State v. Thompson*, 284 Kan. 763, 774, 166 P.3d 1015 (2007). Traffic stops are generally limited to "(i) checking the driver's license; (ii) determining whether there are outstanding warrants against the driver; and (iii) inspecting the automobile's registration and proof of insurance." *State v. Jimenez*, 308 Kan. 315, Syl. ¶ 3, 420 P.3d 464 (2018).

An officer may inquire about subjects unrelated to the purpose of a traffic stop if doing so does not measurably extend the stop's duration. *State v. Morlock*, 289 Kan. 980,

3

Syl. ¶ 4, 218 P.3d 801 (2009). But if an officer obtains reasonable suspicion of another crime during the course of a traffic stop, the officer may extend the stop for a reasonable period of time in order to investigate that suspicion. *State v. Anderson*, 281 Kan. 896, 902, 136 P.3d 406 (2006). Reasonable suspicion requires "''a particularized and objective basis" for suspecting the person stopped of criminal activity.'" *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998) (quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 [1996]).

A seizure "'should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'" *United States v. Sharpe*, 470 U.S. 675, 693-94, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) (Marshall, J., concurring) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 [1983]). Courts assess reasonableness based on the totality of the circumstances. While the duration of a detention is an important factor in the reasonableness analysis, *Sharpe*, 470 U.S. at 685, reasonableness also turns on whether officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." 470 U.S. at 686. The diligence inquiry "is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." 470 U.S. at 687.

To deter violations of the Fourth Amendment by law enforcement, courts hearing criminal cases exclude—or suppress—evidence found as a result of an unlawful search or seizure. *Utah v. Strieff*, 579 U.S. __, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016). This exclusion applies both to "'primary evidence obtained as a direct result of an illegal search or seizure'" and to "'evidence later discovered and found to be derivative of an illegality.'" 136 S. Ct. at 2061 (quoting *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 82 L. Ed. 2d 599 [1984]). Although courts generally refer to this practice as the exclusionary "rule," the Supreme Court has recently emphasized that it is a judicially created remedy and only applies when "'its deterrence benefits outweigh its substantial

4

social costs.'" *Strieff*, 136 S. Ct. at 2061 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S. Ct. 2159, 165 L. Ed. 2d 56 [2006]). In other words, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009).

We review the factual underpinnings of a district court's decision on a motion to suppress evidence for substantial competent evidence and its ultimate legal conclusion de novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When the material facts are not in dispute—as here—whether evidence should be suppressed is a question of law over which our review is unlimited. *State v. Stevenson*, 299 Kan. 53, 57-58, 321 P.3d 754 (2014). Although a defendant initiates a constitutional challenge to a search or seizure by filing a motion to suppress the evidence in question, the State has the burden to prove any challenged police conduct was permissible. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

Here, the district court found that Deputy Bohringer had reasonable suspicion to extend the stop for investigatory purposes beyond the scope of the initial traffic stop. But the court ruled that the investigatory detention was nevertheless unreasonable in violation of the Fourth Amendment. In particular, the duration of the stop—over 80 minutes, including a 50-minute wait between the request for a drug dog and the dog's arrival from another county—coupled with the deputy's stalling strategies rendered the detention unconstitutional. Based on our review of the circumstances in this case, we agree.

The United States Supreme Court has explained that reasonableness in the Fourth Amendment context depends, among other things, on whether officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686. That inquiry "is not simply whether some other alternative was available, but

whether the police acted unreasonably in failing to recognize or to pursue it." 470 U.S. at 687. Individually, none of the deputy's actions appear unreasonable. But the combination of his tactics, compounded by the 50-minute delay before the drug dog's arrival, rendered the stop unconstitutional.

The deputy here testified that, almost from the outset of the stop, he suspected the U-Haul truck contained drugs. He developed this suspicion based on his various observations of the vehicle and the rental agreement; his suspicion increased after Follman and Britton provided divergent explanations of their travel plans. Yet—even though his jurisdiction apparently relied on a drug dog assigned to several counties in central Kansas—the deputy did not request the drug dog from the outset. Instead, he used various stalling tactics to see if he could obtain Follman's consent to search the truck. And even when Follman initially refused consent, he did not request Canine Odie's assistance; he only did so after several more minutes when Follman again refused to consent to a search. As a result of this strategy, the deputy did not request the drug dog's assistance until 30 minutes into the stop. And then, based on Odie's location, it took another 50 minutes before the dog could arrive to investigate the deputy's suspicion. The combination of these factors, which significantly prolonged the already extended duration of the stop, rendered the detention in this case unreasonable.

Based on these circumstances, we agree with the district court's conclusion that Britton's detention violated his rights under the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights. The State does not argue any exception to the exclusionary rule that would allow the evidence obtained from this unlawful detention to be admitted. Thus, the district court properly granted Britton's motion to suppress.

Affirmed.