NOT DESIGNATED FOR PUBLICATION

No. 120,624

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RANDAL J. LONG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed June 26, 2020. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Natasha Esau*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., WARNER, J., and WALKER, S.J.

PER CURIAM: Randal Long appeals his convictions for possession of methamphetamine and possession of drug paraphernalia. The evidence giving rise to these convictions stemmed from a traffic stop, during which Long voluntarily offered that a police officer could search a suitcase on his back seat. After confirming Long's offer multiple times, the officer searched the suitcase and found a vial containing methamphetamine residue. Long now argues the district court should have suppressed the evidence because the search exceeded the scope of the stop. We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

The facts giving rise to Long's convictions were recorded on video and are not in dispute. Officer Tyler Bosley of the South Hutchinson Police Department observed a vehicle turn out of a convenience store right in front of another car and then change lanes without using a turn signal. Officer Bosley activated the lights on his patrol car and stopped the vehicle.

Officer Bosley asked the only person in the vehicle, Long, for his driver's license and proof of insurance. As Long retrieved these documents, the officer asked where he was headed and how long he had been in Wichita. When Long said he had only been in Wichita for the afternoon, the officer asked why he had a suitcase on his back seat. Long said it contained clothes from his recent move from Great Bend to Garden City. Without any further prompting by the officer, Long volunteered, "I mean, you can open it and everything. It's just my clothes."

Long provided Officer Bosley with an expired insurance certificate but indicated his policy had recently been renewed. The officer returned to his patrol car to continue working on the citation and to check if Long's insurance was current. In his patrol car, the officer confirmed that the car was insured and called for a records-check on Long's license. Dispatch reported a possible warrant out of Great Bend for "possession." Officer Bosley informed another officer in the patrol car that Long had "offered" to let him search the suitcase, and he was going to take Long up on that offer while waiting for confirmation of the Barton County warrant.

Officer Bosley returned to the stopped vehicle and confirmed that Long "didn't have a problem with [Bosley] looking through" his suitcase. The officer asked Long to step out of the car, explaining Long was not under arrest at that point. But he indicated that he would like to search the suitcase, based on the explanation Long had provided for

it being there, because Long had "offered." Officer Bosley asked again, "You offered to me that I could search that, is that still good? You're fine with me searching . . . your suitcase?" Long responded, "Yeah, my suitcase, yeah." Officer Bosley once more said, "If you ever want me to stop for any reason, you just let me know, okay?"

Officer Bosley then searched the suitcase and found a vial containing a white powder residue that tested positive for methamphetamine. During the search, dispatch confirmed Long's outstanding warrant from Great Bend. The officers placed Long under arrest and searched the rest of Long's car, finding a glass pipe, digital scales, and several dozen plastic bags.

The State charged Long with possession of methamphetamine and possession of drug paraphernalia. Long filed a motion to suppress, arguing Officer Bosley's initial questions about where Long was going and where he was coming from impermissibly extended the length of the stop.

After hearing testimony from Long and Officer Bosley, the district court denied the motion. The court indicated it had reviewed the video of the traffic stop several times and found Officer Bosley's testimony to be "credible." The court concluded "the officer's questioning was not improper" because it did not measurably extend the stop's duration. And when the officer learned of a possible warrant from Great Bend, "further detention was justified to verify the warrant." Finally, the court found Long "initially volunteered his consent to search his suitcase absent a request from the officer." Based on all these circumstances, including that Long "clearly voluntarily consent[ed] to the search of his suitcase," the court denied the suppression motion.

The case proceeded to a bench trial on stipulated facts, and the court found Long guilty as charged. Long appeals.

DISCUSSION

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment's Due Process Clause, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010).

Courts recognize four types of police-citizen interactions: consensual encounters, public safety stops, arrests, and investigatory stops. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). Because a routine traffic stop constitutes a seizure, such a stop must be reasonable. *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008).

Traffic stops are generally limited to "(i) checking the driver's license; (ii) determining whether there are outstanding warrants against the driver; and (iii) inspecting the automobile's registration and proof of insurance." *State v. Jimenez*, 308 Kan. 315, Syl. ¶ 3, 420 P.3d 464 (2018). But an officer may inquire about subjects unrelated to the purpose of a traffic stop if doing so does not measurably extend the stop's duration. *State v. Morlock*, 289 Kan. 980, Syl. ¶ 4, 218 P.3d 801 (2009). If an officer obtains reasonable suspicion of another crime during the course of a traffic stop, the officer may extend the stop for a reasonable period of time in order to investigate that suspicion. *State v. Anderson*, 281 Kan. 896, 902, 136 P.3d 406 (2006). Reasonable suspicion requires "'"a particularized and objective basis" for suspecting the person stopped of criminal activity.'" *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998) (quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 [1996]). Courts assess reasonableness based on the totality of the circumstances. *United States v. Sharpe*, 470 U.S. 675, 685-86, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985).

4

We review the factual underpinnings of a district court's decision on a motion to suppress evidence for substantial competent evidence and its ultimate legal conclusion de novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When the material facts are not in dispute, suppression is a question of law over which our review is unlimited. *State v. Stevenson*, 299 Kan. 53, 57-58, 321 P.3d 754 (2014). And although a defendant initiates a constitutional challenge to a search or seizure by filing a motion to suppress the evidence in question, the State has the burden to prove any challenged police conduct was permissible. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

In his initial motion to suppress, Long argued that Officer Bosley's questions while Long was looking for his license and proof of insurance—regarding where he had been and where he was going—impermissibly extended the scope of the traffic stop. The district court found that the officer asked these questions as he was completing the traffic stop and that they "did not measurably extend the stop's duration." See *Morlock*, 289 Kan. at 980. Long has abandoned this line of argument on appeal. Instead, he claims the stop was invalid because the officer's request to search his suitcase was unrelated to (and went beyond the scope of) his traffic infraction.

Long did not argue this particular point to the district court. Because we are courts of review, appellate courts generally do not consider arguments raised for the first time on appeal. *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007). But we may choose to do so in a case such as this one, when the issue presented is a question of law that does not require factual development. 283 Kan. at 339. As the district court noted in its ruling, the facts surrounding the search and giving rise to Long's convictions are captured on video, and we, like the district court, have reviewed that recording. We thus turn to the merits of Long's claim.

Officers are not constitutionally permitted to conduct a warrantless search of a person's belongings unless one of the exceptions to the warrant-requirement applies—

5

including consent. *Thompson*, 284 Kan. at 776. In order to establish a person consented to the search, the State must demonstrate the consent was voluntary. To this end, there must be "clear and positive testimony that consent was unequivocal, specific, and freely given." 284 Kan. 763, Syl. ¶ 12. The evidence must show the consent was "given without duress or coercion, express or implied." 284 Kan. 763, Syl. ¶ 12.

The district court found—and our review of the video confirms—that Officer Bosley did not initially ask Long if he could search his suitcase. Instead, when the officer asked why Long had a suitcase in his car when he had only been in Wichita for the afternoon, Long stated—unprompted—that the officer "could open it" if he "want[ed]." After the officer learned of the potential warrant out of Great Bend, Officer Bosley asked Long if he was "still . . . fine with [Bosley] searching . . . [his] suitcase?" Long responded, "Yeah, my suitcase, yeah."

Long argues that this later question by Officer Bosley confirming his previous consent improperly extended the scope of the stop. We disagree. As the district court noted, the officer at that point had learned of a potential warrant for Long's arrest, thus extending the scope of the investigation beyond the initial traffic encounter as he waited for confirmation of the warrant. See *Jimenez*, 308 Kan. 315, Syl. ¶ 3. Officer Bosley's investigation was no longer limited to Long's traffic infractions. See 308 Kan. 315, Syl. ¶ 5; *State v. Wendler*, 47 Kan. App. 2d 182, 194, 274 P.3d 30 (2012).

But more importantly, the district court found that Long voluntarily offered that the officer could search his suitcase—that is, he "volunteered his consent to search his suitcase absent a request from the officer." Substantial competent evidence supports the district court's finding that Long voluntarily consented to the search. Our review of the video shows that Long offered, without any suggestion by the officer, that Officer Bosley could search his suitcase during their initial encounter, before the officer knew of the warrant and minutes before the officer came back to see if Long continued to consent to a

6

search. And despite the officer's statement that Long could stop the search whenever he wanted, he never did so.

Long testified at the suppression hearing that he told the officer he could search the suitcase because he "felt like [he] had to" and "was out of the vehicle" and "felt very pressured." The district court heard this testimony, as well as the testimony of Officer Bosley, observed the witnesses' demeanors, and expressly credited the officer's testimony—not Long's. Appellate courts do not second-guess a district court's credibility assessments. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). The evidence in the record supports the district court's finding that Long voluntarily consented to the search.

Finally, Long asserts the Kansas Supreme Court held in *Smith*, 286 Kan. 402, that an officer can never ask for consent to search a vehicle during a traffic stop. But Long reads *Smith* too broadly. There, a police officer stopped a car for driving with a broken taillight. Smith, a passenger, got out of the car and sat on some steps nearby. While one officer talked to the driver, a second officer arrived and asked Smith if he could search her purse. Smith consented, and the officer arrested her after discovering drugs. The Kansas Supreme Court held the officer's request exceeded the scope of the stop, noting United States Supreme Court decisions prevented officers from requesting consensual searches "during the period of a detention for a traffic stop." 286 Kan. at 419.

More recent decisions of the United States and Kansas Supreme Courts appear to question the reach of *Smith*'s conclusion. See *Arizona v. Johnson*, 555 U.S. 323, 332-33, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009) (officer can question and frisk passenger during traffic stop on matters unrelated to the stop if questions and search are supported by reasonable, articulable suspicion); *Morlock*, 289 Kan. at 990-99 (adopting and applying *Johnson* to allow for warrant check, i.e., search, of passenger). But we need not analyze those cases, as *Smith* is distinguishable from the facts before us.

Unlike in *Smith*, Officer Bosley did not ask Long if he could search the suitcase during the course of a routine traffic stop. Instead, Long voluntarily *offered* that Officer Bosley could search his suitcase without any prompting from the officer. And when Officer Bosley later asked if Long continued to consent to such a search, the officer knew that there was a potential warrant for Long's arrest; Officer Bosley was no longer investigating only Long's traffic infractions. See *State v. Parker*, 309 Kan. 1, 9, 430 P.3d 975 (2018) (analysis in *Smith* does not apply when a detention is no longer a routine traffic stop).

The district court found Smith's offer and confirmation of consent were voluntary, and the record supports that conclusion. Long's unprompted offer of consent and his repeated confirmations of that consent rendered the search of his suitcase constitutionally permissible. The district court did not err when it denied Long's motion to suppress. We affirm his convictions based on that evidence.

Affirmed.