162 P.3d 835 (2007)
In the Matter of J.M.E., A Child Under the Age of Eighteen.
No. 97,780.
Court of Appeals of Kansas.
July 27, 2007.
*837 Jaime Blackwell, assistant county attorney, and Ellen H. Mitchell, county attorney, for appellant.
James L. Sweet, of Sweet & Sheahon, of Salina, for appellee.
Before GREEN, P.J., ELLIOTT and HILL, JJ.
HILL, J.
The State seeks our reversal of a district court's order suppressing drug evidence after the court concluded police officers who searched a car had no specific and articulable facts on which to base their search, and thus ruled the officers could not make a search only for safety reasons. We reverse because the record reveals that the officers were engaged in a valid community caretaking function when, after receiving a telephone complaint about a car, they approached it after finding it parked on a dead-end road, at night, its lights switched off, windows fogged, and an unknown number of people inside. When the windows were rolled down and the officers smelled the odor of burnt marijuana coming from the car, they had probable cause to search the vehicle, and a reasonable search and seizure of apparent contraband followed.
Case Background
During the night of October 20, 2005, J.M.E., a minor, and three other minors were parked at the end of the 2800 block of Melanie, a dead-end road in Salina. Officer Sherree York was dispatched to the area because a resident had reported that a white car was parked at the dead end of the road and was "blacked out." At the scene, York found a white, two-door Dodge Avenger without any lights on and no people outside the car. York shined her spotlight on the car and saw several occupants inside. York indicated that at that point either the car engine started or was already running, and the reverse lights came on. Officer York then turned on her patrol car's rear overhead lights so the Avenger would not back into her and the vehicle's occupants would know she was there.
*838 When Officer York approached the car, she saw that the windows were fogged over. She again shined the spotlight on the car and saw movement. The driver, J.M.E., rolled the window down, and York immediately smelled marijuana. York did not recall whether she knocked on the window or said something to J.M.E. in order to make the initial contact, but J.M.E. testified that York tapped on his window. York then asked for J.M.E.'s driver's license and insurance while waiting for the other officers to arrive.
Officers Gary Hanus and Andrew Zeigler were dispatched to York's assistance. York told them that the car smelled of marijuana, and both officers testified that they also smelled marijuana. The occupants of the car were separated and interviewed. Several of the occupants were attempting to eat the raw marijuana.
Officer Hanus asked J.M.E. to step out of the car and advised him of his rights. While doing this, Hanus saw something in J.M.E.'s mouth, but J.M.E. refused to tell the officer what it was. Hanus shined his light in J.M.E.'s mouth and saw that J.M.E. was trying to swallow marijuana. J.M.E. continued to chew and attempted to swallow. Hanus, however, put his hand on J.M.E.'s neck and throat, pushed him up against the glass, and told him to spit the marijuana out. J.M.E. complied. J.M.E. was handcuffed, but before being placed in the patrol car, he consented to a search of the car. Hanus did not question J.M.E. further after the arrest. A search of the car produced marijuana residue, a red butane lighter, a pair of scissors, and a white rolled paper with one burnt end that contained marijuana residue.
J.M.E. was charged with possession of marijuana. He moved to suppress the evidence obtained by officers. The district court granted J.M.E.'s motion. The court ruled that the officers did not have specific and articulable facts on which to base their search.
The State has appealed the suppression order, arguing that the district court erred in granting J.M.E.'s suppression motion. The State contends that Officer York's initial contact with J.M.E. was constitutional as a community caretaking function and that J.M.E. was legally detained after the officers smelled the odor of burnt marijuana coming from the car.
Scope of Review
When reviewing a motion to suppress,
"this court reviews the factual underpinnings of a district court's decision for substantial competent evidence and the ultimate legal conclusion drawn from those facts de novo. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review. [Citation omitted.] The State bears the burden to demonstrate that a challenged search or seizure was lawful. [Citation omitted.]" State v. Moore, 283 Kan. 344, 349, 154 P.3d 1 (2007).
This court does not reweigh evidence, determine witness credibility, or resolve conflicts of evidence. See State v. Ackward, 281 Kan. 2, 8, 128 P.3d 382 (2006). Moreover, this court normally gives great deference to the factual findings of the district court. State v. Vandiver, 257 Kan. 53, 58, 891 P.2d 350 (1995). Nonetheless, if the material facts underlying the district court's decision are not in dispute, the question of whether to suppress is a question of law, and this court has unlimited review. State v. Porting, 281 Kan. 320, 324, 130 P.3d 1173 (2006).
Substantial competent evidence possesses both relevance and substance. It furnishes a substantial basis of fact from which the issues can reasonably be resolved. Moreover, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. State v. Gray, 270 Kan. 793, 796, 18 P.3d 962 (2001).
Analysis
Constitutional principles are involved in this case. The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights guarantee "`the right of the people to be secure in their persons, houses, papers and effects, *839 against unreasonable searches and seizures.'" State v. Moore, 283 Kan. at 349, 154 P.3d 1.
Furthermore, Kansas courts have recognized four categories of police-citizen encounters: (1) arrests supported by probable cause; (2) stops made in accordance with Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which are supported by reasonable and articulable suspicion of criminal activity; (3) voluntary encounters, which are not seizures; and (4) community caretaking functions. City of Topeka v. Grabauskas, 33 Kan.App.2d 210, 214, 99 P.3d 1125 (2004). The community caretaking or public safety encounter is an encounter that is "`totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)." Grabauskas, 33 Kan. App.2d at 214-15, 99 P.3d 1125.
In Grabauskas, the defendant was walking down the street and was initially stopped by police because they wanted to determine if she was a recently reported runaway. The officers did not believe the defendant was involved in any criminal activity, and this court held that the initial encounter was reasonable under the community caretaking function. Moreover, in State v. Reason, 263 Kan. 405, 409, 412, 951 P.2d 538 (1997), the Kansas Supreme Court determined that the case did not concern an illegal stop because the defendant was in a parked car at the time of the police encounter but ultimately categorized the encounter as voluntary.
But there are limits to the community caretaking function. Actions taken under the public safety or community caretaking exception should be scrutinized carefully to ensure that the Fourth Amendment protections are not emasculated. State v. Gonzales, 36 Kan.App.2d 446, 455, 141 P.3d 501 (2006). Accordingly, "the scope of the detention during a public safety stop cannot exceed the justifications for the stop." 36 Kan.App.2d at 455, 141 P.3d 501.
The district court here based its decision on State v. McKeown, 249 Kan. 506, 819 P.2d 644 (1991). In McKeown, an unfamiliar car parked in a rural area was reported to police. An officer approached the area where the car had been reported and saw two cars stopped beside each other. Both cars left the location before the officer arrived. The officer then noticed that one of the cars matched the description of the reported car and proceeded to stop that car. The officer noted that the car was not involved in any criminal activity. When the officer approached the car, he smelled marijuana and saw an open beer can in the car; the defendant was arrested and searched. The court determined that stopping a moving vehicle always constitutes a seizure and officers need articulable facts to constitute reasonable suspicion of criminal activity. The court held that the officer in that case did not have reasonable suspicion of criminal activity to stop defendant because the reported car was no longer parked in the reported location. 249 Kan. at 515, 819 P.2d 644.
A review of some of the facts of this case is useful here. Officer York testified that J.M.E. was free to leave and could have left the area prior to her contact with him. She indicated that she did not block J.M.E. from leaving-the car could have reversed and gone around her or driven through the field. She stated that she was parked approximately 20 to 25 feet from the car. On the other hand, J.M.E. stated that the patrol car was no more than a car length away from him. Moreover, J.M.E. testified that he saw a patrol car and red lights when York pulled in behind him, and he indicated that he did not feel free to leave.
Officer York also testified that any time a suspicious car is reported, the main goal of any officer is to make sure everyone in the car is safe. She further testified that her purpose in approaching the Avenger that night was to ensure the safety of the occupants. York admitted that she did not have any reason to believe the occupants were or were not safe, other than them being parked in an area where they did not belong and having no lights on. Moreover, there were no reports of criminal activity and there were not any initial reasons to suspect criminal activity.
*840 This encounter clearly fell under the community caretaking function. Officer York here did not stop J.M.E. because the car was already parked when York arrived. Furthermore, the car matched the description of the car reported by the resident and was still in the reported location, unlike the car in McKeown. Even though J.M.E. started the car and turned on his lights after York arrived, York turned on her overhead lights to let J.M.E. know that she was there, not to seize him. Therefore, the initial contact between J.M.E. and York was constitutional.
To justify further detention or investigation during a traffic stop, the officer must have reasonable and articulable suspicion of a crime. State v. Anderson, 281 Kan. 896, 902, 136 P.3d 406 (2006). Reasonable suspicion is less demanding than probable cause. State v. Morris, 276 Kan. 11, 24, 72 P.3d 570 (2003). It is "`"a particularized and objective basis" for suspecting the person stopped of criminal activity.'" State v. DeMarco, 263 Kan. 727, 735, 952 P.2d 1276 (1998) (quoting Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 [1996]). It must be more than an "inchoate and unparticularized suspicion or `hunch'"; there must be specific reasonable inferences drawn from the facts. Terry, 392 U.S. at 27, 88 S.Ct. 1868. Information used to create the reasonable suspicion must be considered under the totality of the circumstances. Morris, 276 Kan. at 24, 72 P.3d 570.
Officer York smelled marijuana emanating from the car when she approached it and J.M.E. rolled down the window. She testified that, after she smelled the marijuana, the occupants were no longer free to leave. Officer Hanus, who had worked on a drug task force for 3 years and had worked numerous marijuana cases, testified that he smelled the marijuana and suspected that the occupants were committing the crime of smoking marijuana.
The smell of marijuana arising from the car when its windows were rolled down provided the officers with reasonable suspicion of criminal activity and probable cause to search the car. The district court's decision lacked substantial competent evidence and was the incorrect legal conclusion.
Reversed and remanded with directions to admit the evidence seized during the search.