(202 P.3d 743)
No. 100,356

STATE OF KANSAS, *Appellee*, v. SEAN SCHUFF, *Appellant*.

Opinion filed March 13, 2009.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Amy Hanley*, assistant county attorney, *Ellen H. Mitchell*, county attorney, and *Stephen N. Six*, attorney general, for appellee.

Before CAPLINGER, P.J., MALONE and LEBEN, JJ.

MALONE, J.: Sean Schuff appeals his conviction of one count of possession of marijuana. Schuff claims the district court erred by denying his motion to suppress the evidence. Specifically, Schuff argues that the district court erred in determining that his initial encounter with a police officer was justified as either a public safety stop or a voluntary encounter. We hold the encounter was justified as a public safety stop, and we decline to address the voluntary encounter issue.

On September 27, 2007, at 12:40 a.m., the Salina Police Department dispatch received a phone call from a young woman who expressed concern about seeing a car drive off the road near her neighborhood. The audio CD of the original phone call is included in the record on appeal. The caller did not state her name but indicated she lived in the area of Cedar Creek Community Park. She informed dispatch that she saw a white car "drive through the dead end on Marcella Drive" and did not return. She indicated that she did not know whether the car went into a field or down into a creek. The caller further informed dispatch that she just wanted to make sure somebody was not "stuck out there." The dispatch officer informed the caller that the police would check the matter out.

Following the phone call, Officer Matthew Gaywith was dispatched to the 3300 block of Marcella Drive. The dispatch officer informed Gaywith that a white car had driven through the dead end of Marcella Drive and he was supposed to check out the sit-

uation. Gaywith arrived at 12:49 a.m., and he located a white car near the dead end of Marcella Drive. An aerial map introduced into evidence showed that the car was found in a remote area away from any houses. The car was parked off the paved road next to a field. The engine was not running and all the lights were off. Gaywith parked his patrol vehicle about 20 yards behind the car. He testified there was room for the car to turn around and leave the area if it had attempted to do so. The car's interior was dark and Gaywith was unable to see what the occupants of the car were doing.

Gaywith activated his patrol vehicle's emergency overhead lights. He testified that he did so because he did not want someone to run into the back of his patrol vehicle. On cross-examination, however, Gaywith admitted that activating the emergency lights was a signal for the occupants of the car "to stay put."

Gaywith approached the car without drawing his weapon. He testified that his purpose in approaching the car was "just to check on those folks, make sure they were alright, no car problems, you know, just to check on the situation." On cross-examination, he admitted he did not observe anything that caused him to believe that anyone in the car was in any type of distress.

When he reached the driver's door, the window was down and Gaywith observed four people inside the car. Gaywith identified himself as a police officer and "asked them what they were doing out there." Schuff, the driver, responded they were just sitting there. Gaywith immediately smelled the odor of marijuana, and he observed marijuana on the window frame of the car door. This prompted Gaywith to call for a canine unit. The police later found additional marijuana inside the car.

The State charged Schuff with one count of possession of marijuana. Schuff filed a motion to suppress the evidence and argued that Gaywith had no lawful justification to stop and approach his car. The State argued that the initial encounter was justified as either a community caretaking stop or a voluntary encounter.

After hearing the evidence, the district court found that the encounter was lawful under both legal theories. The district judge stated that "this was [an] officer responding to a call from a con-

cerned citizen, it's not a normal place or a normal time for a vehicle to be parked in a remote location. . . . So in this particular case I can't imagine what any reasonable officer would have done other than what this officer did . . . ." The district court further stated, "There is no particular level of suspicion which is required for the officer to strike up a conversation with the occupants of the vehicle." Based on these findings, the district court denied the motion to suppress. Schuff was convicted as charged. He timely appeals.

Schuff claims the district court erred by denying his motion to suppress the evidence. Schuff does not dispute the fact that once Gaywith smelled the odor of marijuana and observed marijuana in the car, he had reasonable suspicion to extend the scope and duration of the stop. However, Schuff argues that Gaywith had no lawful justification to stop and approach his car in the first place. The State argues that the encounter was justified as either a community caretaking stop or a voluntary encounter.

An appellate court reviews the district court's decision on a suppression motion using a bifurcated standard. Without reweighing the evidence, the appellate court reviews the district court's findings to determine whether they are supported by substantial competent evidence. The appellate court then reviews the ultimate legal conclusion regarding the suppression of evidence using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

We will first examine whether Gaywith's encounter with Schuff can be justified as a community caretaking stop, sometimes called a public safety stop. The Kansas Supreme Court first recognized the concept of a community caretaking stop in *State v. Vistuba*, 251 Kan. 821, Syl. ¶ 1, 840 P.2d 511 (1992), *disapproved in part on other grounds State v. Field*, 252 Kan. 657, 847 P.2d 1280 (1993). In *Vistuba*, the officer testified that she observed erratic driving and was concerned that the driver might be impaired. However, the officer specifically stated that she did not suspect any criminal activity from her observations. The Supreme Court determined the stop was lawful and held: "[A] civil or criminal infraction is not always essential to justify a vehicle stop. Safety rea-

sons alone may justify the stop, *if the safety reasons are based on specific and articulable facts."* 251 Kan. at 824.

In *State v. Gonzales,* 36 Kan. App. 2d 446, 141 P.3d 501 (2006), this court further refined the appropriate justification for a public safety stop and the limited duration and scope of such a stop. In *Gonzales,* an officer stopped the defendant's vehicle when the officer observed a "bouncy" rear tire and an open hatch over the fuel cap. After the stop, the officer immediately asked for information about ownership of the vehicle and demanded the occupants' driver's licenses, rather than examining the problematic tire. After several minutes of questioning, the driver consented to a search of the vehicle. The court upheld the initial stop for public safety reasons, but the court also held the subsequent search of the vehicle was illegal because the duration of the stop exceeded the scope of the public safety justification. 36 Kan. App. 2d at 458.

The *Gonzales* court determined that the legality of a public safety stop can be evaluated in three steps. First, as long as there are objective, specific, and articulable facts from which a law enforcement officer would suspect that a citizen is in need of help or is in peril, the officer has the right to stop and investigate. Second, if the citizen is in need of aid, the officer may take appropriate action to render assistance. Third, once the officer is assured that the citizen is not in peril or is no longer in need of assistance, any actions beyond that constitute a seizure, implicating the protections provided by the Fourth Amendment to the United States Constitution. 36 Kan. App. 2d at 456.

Courts must employ careful scrutiny in applying the public safety rationale. Public safety stops should be " 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *City of Topeka v. Grabauskas,* 33 Kan. App. 2d 210, 214-15, 99 P.3d 1125 (2004) (quoting *Cady v. Dombrowski,* 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 [1973]); see *Gonzales,* 36 Kan. App. 2d at 457. Unless a public safety stop is based upon specific and articulable facts, the concept could " 'emasculate the constitutional protection afforded a motorist's privacy under *Terry.' " Nickelson v. Kansas Dept. of Revenue,* 33 Kan. App. 2d 359, 364, 102 P.3d 490 (2004) (citing *State*

*v. Ludes,* 27 Kan. App. 2d 1030, 1035, 11 P.3d 72, *rev. denied* 270 Kan. 902 [2000]); see *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

In *Nickelson,* a Kansas Highway Patrol (KHP) trooper was on routine patrol at approximately 1 a.m., when he observed a driver turn off the highway into a " 'farm plug' " or driveway. 33 Kan. App. 2d at 360. The vehicle made a circle and stopped, and the driver turned off his car lights. There were no farm buildings, outbuildings, businesses, or residences in the area, and the weather was cold but clear. The trooper testified he was concerned that the driver might be in distress because he had turned into an isolated area and turned off his car lights. He testified that it was KHP policy to check on the welfare of any stranded motorist and that his supervisors had given him instructions to stop and assist people on the highways. The trooper stopped his patrol vehicle next to the driver's vehicle and blocked it from the highway. He then approached the vehicle and asked the driver if he was okay. When the driver rolled down the window in order to respond, the trooper immediately smelled a strong odor of alcohol. The driver subsequently failed a breath test, and the district court upheld the suspension of his driver's license.

On appeal, this court held the initial encounter was justified as a lawful public safety stop because the trooper expressed specific and articulable facts for approaching the vehicle for public safety concerns. 33 Kan. App. 2d at 365. The court further held that once the trooper had lawfully stopped the vehicle, the trooper's detection of the odor of alcohol from the vehicle constituted a sufficient reason to extend the scope and duration of the stop. 33 Kan. App. 2d at 367.

In *In re J.M.E.,* 38 Kan. App. 2d 229, 162 P.3d 835 (2007), this court faced a nearly identical factual scenario to Schuff's case. An officer was dispatched at night to an area because a resident had reported that a white car was parked at the dead end of a road with its lights off. The officer parked approximately 20 to 25 feet behind the car and activated her emergency lights. The officer admitted she did not have any reason to believe the occupants of the car were or were not safe or that criminal activity was occurring. How-

ever, the officer testified that any time a suspicious car is reported, the main goal of any officer is to make sure everyone in the car was safe. When the officer exited her patrol vehicle and approached the car, she immediately smelled marijuana emanating from the car. Once she smelled the marijuana, the officer pursued a criminal investigation. In analyzing whether the stop was justified, this court stated: "This encounter clearly fell under the community caretaking function." 38 Kan. App. 2d at 234.

Turning to our facts, Gaywith had been dispatched to the area just before 1 a.m., based on a citizen's call that a white car had driven through a dead-end road. The caller was concerned that the car had driven into a field or went down into a creek. Gaywith located the white car in a remote area parked off the paved road next to a field. The engine was not running and all the car lights were off. Gaywith could not see what was going on inside the car, so he approached the car "just to check on those folks, make sure they were alright, no car problems, you know, just to check on the situation."

Safety reasons alone may justify a stop, if the safety reasons are based on specific and articulable facts. *Vistuba*, 251 Kan. at 824. Gaywith approached Schuff's vehicle based on the following specific and articulable facts: (1) He had been dispatched to the area specifically to check on the welfare of a white car which had driven off the road, (2) it was just before 1 a.m., (3) the car was in a remote area, and (4) the car was parked off the paved road next to a field. It is important to view the encounter based on what Gaywith knew at the time rather than exercising hindsight. At the time of the encounter, Gaywith expressed specific and articulable facts for approaching the vehicle for public safety concerns.

Gaywith acknowledged on cross-examination that he did not observe anything that caused him to believe that anyone in the car was in any type of distress. This statement alone does not preclude the finding of a lawful public safety stop. There is a difference between the public safety rationale, which can be used to justify a car stop, and the emergency doctrine which can be used to justify a warrantless search. Under the emergency doctrine, the police must have reasonable grounds to believe that there is an emergency

at hand and an immediate need for their assistance for the protection of life or property. There must also be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. *State v. Horn*, 278 Kan. 24, Syl. ¶ 2, 91 P.3d 517 (2004). Under the public safety rationale for car stops, there must be specific and articulable facts from which a law enforcement officer "would suspect that a citizen is in need of help or is in peril." *Gonzales*, 36 Kan. App. 2d at 456.

Here, Gaywith did not have to actually observe an emergency at hand or an immediate need for his assistance for the protection of life or property in order to check on the welfare of the occupants of the vehicle. The fact that it was late at night and the car was in a remote area parked off the paved road next to a field provided sufficient justification for Gaywith to *suspect* that a citizen was in need of help or was in peril, especially in light of the phone call from a citizen to check on the welfare of the occupants of the car.

Whether a police-citizen encounter can be justified as a public safety stop turns on the facts of each particular case. We conclude that Gaywith expressed specific and articulable facts for approaching Schuff's vehicle for public safety concerns. To paraphrase the district court's finding, we cannot imagine what any reasonable officer would have done other than what Gaywith did. Under the totality of the circumstances, we conclude that the initial encounter between Gaywith and Schuff was justified as a public safety or community caretaking stop.

The State also argues that the initial contact between Gaywith and Schuff was a voluntary encounter. Because our ruling on the public safety justification is dispositive, we decline to address the voluntary encounter issue.

Affirmed.