NOT DESIGNATED FOR PUBLICATION

No. 122,128

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARLOS R. BATES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed January 29, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and MCANANY, S.J.

PER CURIAM: Carlos Bates appeals his convictions of possession of drugs and drug paraphernalia with the intent to distribute. He asserts that the district court should have granted his motion to suppress evidence of the drugs and paraphernalia in question, as that evidence was gained as a result of an unreasonable and unwarranted traffic stop. After carefully considering the record before us and the parties' arguments, we find the officers' investigatory detention of Bates' van was supported by reasonable suspicion of criminal activity. Thus, we affirm the denial of Bates' motion to suppress and affirm his convictions.

1

FACTUAL AND PROCEDURAL BACKGROUND

At around 1:30 a.m. on September 1, 2017, the Wichita Police Department received a call reporting that a suspicious person had just knocked on the caller's front door. The caller indicated he did not know who the knocker was and was not expecting anyone. The caller's neighborhood had recently experienced a number of burglaries, and police officers were aware that late-night knocks are often associated with attempted residential break-ins.

Officers Joshua Gilmer and Ryan Oliphant responded to investigate. When they arrived, the officers noticed a red minivan, its lights on and engine running, parked on the street outside the caller's address. The officers parked their patrol cars around the corner from the van. Officer Gilmer began walking towards the van, illuminating it with his flashlight. But the van drove off before he could reach it. Officer Oliphant returned to his patrol car and searched for the van, locating it in an alley about 1 1/2 blocks away with its lights off. Officer Oliphant activated his emergency lights and notified Officer Gilmer.

When both officers were present, they approached the van. Officer Gilmer spoke with the passenger, who police later identified as Bates. Both officers noticed the smell of marijuana; they subsequently searched the van and found open beer containers, marijuana, cocaine, a box of plastic baggies, and two sets of scales. Bates waived his *Miranda* rights and admitted that the marijuana and cocaine belonged to him.

The State charged Bates with possession of cocaine with the intent to distribute and possession of drug paraphernalia with the intent to distribute. Bates filed a motion to suppress the evidence found in the van, arguing the officers lacked reasonable suspicion to conduct a traffic stop. At the motion hearing, the officers testified they detained the van because they wanted to know why it had been parked in front of the 911-caller's house. They noted that gang activity, residential burglaries, and car break-ins are

common in the neighborhood. And Officer Gilmer explained that some burglars were known to knock on the front door of a residence to determine if anyone was home and, if they received no response, to break in through the rear of the home.

The district court denied the suppression motion. It found the officers lacked sufficient grounds for an investigative detention because they did not have evidence that a specific crime had been or was being committed. But the court determined the officers were investigating the late-night knock under their community-caretaking role. The court found that the officers' investigation was part of a valid public-safety stop. Based on the knocking and the early hour, the officers could reasonably suspect that someone needed assistance; this suspicion, combined with the van's proximity to the house, permitted the officers to ask the van's occupants whether they needed help or had any information about who had knocked on the door.

The case proceeded to a bench trial on stipulated facts. The district court found Bates guilty on both charges. He now appeals.

DISCUSSION

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment's Due Process Clause, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010).

Whenever an officer encounters a citizen in a public place, the rights protected by the Fourth Amendment are implicated. The rules of law applied to safeguard the Fourth Amendment's protections vary depending on the type of encounter between the individual

and law enforcement. Kansas courts have recognized four types of such encounters: (1) voluntary encounters; (2) investigatory detentions; (3) public-safety stops and welfare checks; and (4) arrests. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

An investigatory detention—also known as a "*Terry* stop" after *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)—occurs when an officer detains a person in a public place because the officer reasonably suspects the person "is committing, has committed or is about to commit a crime." K.S.A. 22-2402(1); see *Terry*, 392 U.S. at 21-22; *State v. Thomas*, 291 Kan. 676, Syl. ¶ 8, 246 P.3d 678 (2011). A reasonable suspicion is "a particularized and objective basis for suspecting the person stopped is involved in criminal activity." 291 Kan. 676, Syl. ¶ 9. Reasonableness in this context is viewed "'based on the totality of the circumstances'" and "'in terms as understood by those versed in the field of law enforcement.'" 291 Kan. at 687.

Whether reasonable suspicion exists is a question of law. *Thomas*, 291 Kan. at 688. Reasonable suspicion is a less rigorous standard than probable cause and requires a showing considerably less than preponderance of the evidence. *State v. Johnson*, 293 Kan. 1, 6, 259 P.3d 719 (2011). But the standard requires more than an inchoate and unparticularized suspicion or hunch of criminal activity. 293 Kan. at 6.

Unlike investigatory detentions, welfare checks and public-safety stops fall under law enforcement's community-caretaking function. These encounters arise when an officer checks on a person's welfare for safety reasons or to provide assistance. See *State v. Vistuba*, 251 Kan. 821, 824, 840 P.2d 511 (1992), *disapproved of on other grounds by State v. Field*, 252 Kan. 657, 847 P.2d 1280 (1993). During this type of encounter, a "law enforcement officer who has available objective, specific, and articulable facts creating a suspicion that an individual needs help or is in peril may stop and investigate the situation." *State v. Ellis*, 311 Kan. 925, Syl. ¶ 1, 469 P.3d 65 (2020). And if a person "has been stopped subsequent to a legitimate suspicion that she or he needs aid, the officer

4

may take appropriate action to render assistance." 311 Kan. 925, Syl. ¶ 2. The caretaking role dissipates when "an officer confirms no one needs assistance or the assistance has been provided." *State v. Neighbors*, 299 Kan. 234, 252, 328 P.3d 1081 (2014).

To deter violations of the Fourth Amendment by law enforcement, courts hearing criminal cases exclude—or suppress—evidence found as a result of an unlawful search or seizure. *Utah v. Strieff*, 579 U.S. ___,136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016). This exclusion applies both to "'primary evidence obtained as a direct result of an illegal search or seizure'" and to "'evidence later discovered and found to be derivative of an illegality.'" 136 S. Ct. at 2061. Although courts generally refer to this practice as the exclusionary "rule," the Supreme Court has recently emphasized that it is a judicially created remedy and only applies when "'its deterrence benefits outweigh its substantial social costs.'" 136 S. Ct. at 2061. In other words, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009).

We review the factual underpinnings of a district court's decision on a motion to suppress evidence for substantial competent evidence and its ultimate legal conclusion de novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When the material facts are not in dispute—as here—whether evidence should be suppressed is a question of law over which our review is unlimited. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014). Although a defendant initiates a constitutional challenge to a search or seizure by filing a motion to suppress the evidence in question, the State has the burden to prove any challenged police conduct was permissible. *Cleverly*, 305 Kan. at 605.

On appeal, Bates argues the district court correctly found the officers lacked reasonable suspicion to justify an investigatory stop but erred in concluding the stop was

justified by public-safety concerns. And he argues that the evidence is not sufficiently attenuated from the officers' conduct to render it admissible.

The district court found that this encounter fell within the officers' community-caretaking function. The court focused on the fact that a person may be knocking on a door in need of help, and the officers may have inferred that it was the people in the van outside the door of the residence who needed assistance. This explanation is not supported by the officers' testimony, however.

At the suppression hearing, Officer Gilmer explained that he was suspicious about the reported knock, given his knowledge of burglars' tactics and previous burglaries in the area. He stated that when he saw the van parked outside the residence, he wanted to identify the van's occupants and determine whether they were supposed to be there. When the officers approached the van, it drove away—a move Officer Gilmer interpreted as an effort to evade investigation. Officer Oliphant stated he stopped the van to obtain more information because it was parked in a high crime neighborhood, and he found parking a van in an alley with its lights off to be suspicious.

This testimony does not support the district court's explanation that the encounter was a public-safety stop. Unlike in the cases cited by the State in its brief, the officers' actions here were not motivated by their concern for the well-being of the van's occupants. See *State v. Schuff*, 41 Kan. App. 2d 469, 202 P.3d 743 (2009), *rev. denied* 289 Kan. 1284 (2010) (officer responded to call about a car that drove through the dead end of a remote road and remained unmoving); *In re J.M.E.*, 38 Kan. App. 2d 229, 162 P.3d 835 (2007) (officer responded to a nighttime call about a car parked on a dead-end road with its lights out). Instead, the officers were engaged in an investigation as to the nature and meaning of the late-night knock, given that action's criminal implications. Thus, the district court erred when it analyzed the officers' subsequent detention of the van as a welfare check.

This analytical misstep does not mean, however, that the court erred when it denied Bates' motion to suppress. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (district court's decision will be upheld if it reaches the correct result even though it relied upon the wrong ground for its decision). After reviewing the evidence before us, we conclude the officers had reasonable suspicion to detain the van as part of their investigation into a potential burglary in the neighborhood. We thus affirm the district court's denial of Bates' motion to suppress, albeit for a different reason than the court provided.

Officers Gilmer and Oliphant relied on seven facts when stopping the van: (1) They responded to a report of someone knocking on the front door of a caller's residence; (2) they received the report early in the morning; (3) burglaries were common in the neighborhood; (4) Officer Gilmer stated burglars will sometimes knock on the front door to determine whether someone is home; (5) upon arriving, the officers saw a van parked outside the residence with its lights on; (6) the van drove away as Officer Gilmer approached it; and (7) Officer Oliphant found the van parked with its lights off in an alley 1 1/2 blocks away.

These facts, and the reasonable inferences drawn from them, give rise to a reasonable suspicion that criminal activity was afoot. The 911-caller reported someone had knocked at the front door. While the officers did not observe the knock, this information was reliable because the caller, by providing the house's address, could be identified and held to account. See *State v. Chapman*, 305 Kan. 365, 373, 381 P.3d 458 (2016) (discussing reliability of tip based on whether identity of provider is disclosed, could be ascertained, or could not be discovered). The caller indicated he did not expect a visitor. Based on the van's location and its lights being on, the officers could reasonably conclude one of the van's occupants was the door-knocker.

Officer Gilmer's statement describing how some burglars operate tied the knocking to potential criminal activity. The time of the call and the prior illegal activity in the neighborhood strengthened that connection. And after Officer Gilmer attempted to approach the van, it drove away and parked with its lights off in a nearby alley, suggesting its occupants did not want to interact with police.

Individually, these circumstances may simply appear odd. See *Chapman*, 305 Kan. at 372 (report of suspicious but not criminal activity cannot form reasonable suspicion). But in light of Officer Gilmer's description of burglaries, these circumstances become sufficiently suspicious to suggest a crime was going to be committed, warranting an investigatory detention. See *State v. Kirby*, 12 Kan. App. 2d 346, 353, 744 P.2d 146 (1987) (noting "location, time of day, previous reports of crime in the area, and furtive actions of suspects" may support reasonable suspicion but time of day and crime in the area cannot justify a stop by themselves), *disapproved of on other grounds by State v. Jefferson*, 297 Kan. 1151, 310 P.3d 331 (2013).

We conclude that, under the totality of the circumstances, the officers' investigatory detention of the van was supported by reasonable suspicion that the occupants intended to commit a burglary. Bates does not challenge the subsequent search of the van, which produced the drugs and paraphernalia he later admitted to possessing. The district court did not err when it denied Bates' motion to suppress.

Affirmed.