NOT DESIGNATED FOR PUBLICATION

No. 126,589

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MIGUEL IGNACIO BAEZ,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Oral argument held September 17, 2024. Opinion filed December 20, 2024. Affirmed in part and reversed in part.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.


PER CURIAM: Miguel Ignacio Baez appeals his convictions of possession of marijuana with intent to distribute and criminal acquisition of drug proceeds derived from violations of drug laws. On appeal, Baez claims the district court erred in denying his motion to suppress because the law enforcement officers did not have reasonable suspicion to conduct a traffic stop. We disagree and affirm the district court's ruling. In addition, Baez argues the evidence presented by the State was insufficient to sustain a conviction for criminal acquisition of drug proceeds. The State concedes that Baez'

1

conviction for criminal acquisition of drug proceeds should be reversed. We agree and reverse that conviction.

FACTUAL AND PROCEDURAL HISTORY

After conducting a traffic stop and subsequently searching the vehicle, the State charged Baez with possession of marijuana with the intent to distribute, possession of tetrahydrocannabinol (THC) with intent to distribute, possession of drug paraphernalia with intent to distribute or manufacture, and criminal acquisition of proceeds derived from violations of drug laws. Before trial, Baez moved to suppress the evidence, arguing that the law enforcement officers did not have reasonable suspicion to stop him and further did not have probable cause to detain him and search his car without a warrant.

The facts presented at the motion to suppress hearing follow.

At approximately 8 p.m. on August 2, 2019, Officer Jeff Walters and Officer Brandon Faulkner with the Wichita Police Department were standing with some other officers on the roadway on East Wilma after completing another call. A black Chrysler passed by the officers heading eastbound on Wilma at a slow rate of speed— under the speed limit of 30 miles per hour. The officers were on opposite sides of the roadway, and the person driving the Chrysler drove between them.

Officer Walters observed the passenger window was part-way down on the vehicle. Both Officer Walters and Officer Faulkner commented that they could smell a strong odor of marijuana coming from the vehicle. Officer Walters testified that at the time the Chrysler passed by, there were no other cars on the road, and "it was very obvious . . . that [the odor] was coming from that car." He said there were no other individuals walking along the street at that time, and there was no odor of marijuana on the street prior to the time the Chrysler passed by the officers. He testified that "the odor

was pungent as [the Chrysler] drove by" and the odor "dissipated" as the car traveled away from them after passing.

Officer Faulkner testified that he was within 10 to 15 feet of the open passenger window as it passed by. He stated that he smelled a "very strong odor" of green marijuana from the vehicle. He testified that before the car passed "there was no odor of marijuana coming from anywhere in that area, but as soon as that car passed us there was an overwhelming odor of marijuana." He described the odor as "green marijuana" rather than burnt marijuana, with an odor that is fresher than that of burnt marijuana because it has not yet been smoked. Faulkner confirmed there were no civilians standing on the side of the road to account for the odor, nor were there other cars passing by at the same time. He agreed that he had no reason to believe that the odor was coming from anywhere other than the Chrysler.

Officer Walters got into his patrol car and began to follow the Chrysler. Officer Faulker also got into his patrol car and headed in the opposite direction to intercept the Chrysler in case it turned off on one of the side streets.

Officer Walters caught up to the Chrysler and initiated a traffic stop. When the driver of the vehicle pulled over, Officer Walters approached the driver's side of the vehicle. As he approached the back rear tire, he testified he "could again smell the same odor [of raw marijuana that he] smelled over on Wilma." Shortly after Officer Walters arrived, Officer Faulkner arrived at the scene and approached the passenger side of the vehicle. Officer Faulkner also smelled the odor of marijuana as he approached the Chrysler, and he confirmed it was the same odor he smelled on Wilma Street as when the Chrysler passed by his location.

Officer Walters informed the driver that he pulled him over because he smelled the odor of marijuana when he passed him on Wilma Street. The driver identified himself

3

as Baez, and there was also a passenger in the vehicle. Officer Walters informed Baez that he could smell the odor of marijuana, and Baez admitted they had recently smoked marijuana in the vehicle.

Officer Walters requested that Baez step out of the vehicle. At that time, Officer Faulkner thought he saw a gun, so he alerted Officer Walters that the occupants of the vehicle might be armed and dangerous. Officer Walters then detained Baez and placed him in handcuffs.

The officers searched the car based on their belief that Baez and his passenger were in possession of marijuana. Officer Faulkner searched the passenger's side, and he located a red Nike shoe box on the floorboard of the vehicle, which contained about 1/2 pound to 3/4 of a pound of raw marijuana. In the center console of the vehicle, Officer Walters located a little over $11,800 in cash in a stack with a rubber band around it. He also located a stolen Springfield XD40 handgun which was wedged in between the front seat and the center console. In addition, Officers Walters found two packages of rubber bands in the glove box that were similar to the rubber bands around the cash. A marijuana grinder was also found in the center console of the vehicle.

While Officer Walters was searching inside the car, Officer Faulkner searched the trunk and found several large bags containing just under 11 pounds of raw marijuana. In one of the bags containing marijuana, there was a document requesting that Baez attend jury duty. In addition to the raw marijuana, the officers located 23 THC vape cartridges that are used to smoke through a vape pen behind the driver's seat. In addition, the officers found 137 THC vape cartridges in the trunk of the vehicle, which were stored in Ziploc vacuum-style bags. Finally, Officer Walters found an additional roll of the Ziploc vacuum-style bags that were similar to the bags containing the vape cartridges.

Both officers involved in this stop had training and experience in drug detection. Officer Walters said he had previous experience with raw marijuana while on duty "[m]any times" and was familiar with its odor. Officer Walters testified that in his experience a stronger odor emits from better quality marijuana, and there are times that "you can smell it in a house as you're approaching . . . through closed doors and closed windows." Officer Walters said that in the past he had been following vehicles containing raw marijuana, and he was able to smell the marijuana as he followed those vehicles.

Similarly, Officer Faulkner testified that he had been employed by the police department for about 10 years. In his training, he became familiar with the odor of marijuana. Officer Faulker spent over three years in a unit where his primary job was handling drug complaints and violent crime within the city. In addition, he spent four years with the canine unit, and he handled marijuana at least once a week when they train their dogs. Officer Faulkner testified that he had "pretty extensive training on what marijuana looks and smells like," and his training and experienced included the detection of the odor of raw or green marijuana. Officer Faulkner estimated he had contact with raw or green marijuana "[t]housands" of times.

At the conclusion of the hearing, the district court denied Baez' motion to suppress the evidence. The district court found reasonable suspicion of an offense justifying a stop of the vehicle based on the testimony of both officers that they could smell the odor of raw or green marijuana coming from the vehicle as the Chrysler passed by their location on Wilma Street. The court rejected Baez' argument that the stop must be based on a traffic violation or equipment violation, providing examples of an officer observing gunfire coming from a car, a vehicle fleeing from a crime scene, or a physical altercation within a vehicle as examples of when a vehicle could be stopped based on reasonable suspicion of a crime rather than observance of a traffic or equipment violation. In addition, the district court found the officers had probable cause to search the vehicle after the traffic stop.

5

After the suppression ruling, Baez and the State agreed to conduct a bench trial based on stipulated facts. The district court held a hearing to confirm Baez' intent to waive his right to a jury trial and participate in the bench trial on stipulated facts. As part of the agreement between the parties, the State agreed to dismiss two of the charges and proceed with the remaining charges of possession of marijuana with intent to distribute and criminal acquisition of proceeds derived from violations of drug laws. In addition, both parties agreed to recommend the low number in the appropriate Kansas Sentencing Guidelines grid box and to run the counts concurrent with one another. The State also agreed to recommend a dispositional departure to probation. Baez reserved the right to appeal the district court's ruling on his motion to suppress.

The stipulated facts for trial were as follows:

"On August 2nd, 2019, the defendant, Miguel Ignacio Baez, was driving his black Chrysler 300 with the license plate 586KPD within Wichita, Sedgwick County, Kansas. While operating his vehicle within Sedgwick County Kansas, Miguel Ignacio Baez passed by Officer Walters and Officer Faulkner of the Wichita Police Department. As Miguel Baez drove past both officers, they smelled a strong odor of raw marijuana emitting from Miguel Ignacio Baez's vehicle.

"Due to the previous smell of marijuana, Officers Walters and Faulkner conduct a traffic stop of the defendant, Mr. Baez's vehicle at the intersection of Morris and Bluff in Sedgwick County, Kansas. Upon approach, officers observe a strong odor of raw marijuana emitting from the vehicle. Officers have the defendant, Miguel Baez, exit the vehicle, and conduct a search of the vehicle. Upon searching the vehicle officers recover $11,831 in U.S. Currency, rolling papers, rubber bands, 11 bags of marijuana totaling 10.6 pounds, a roll of vacuum seal bags, paperwork for Miguel Baez's jury duty summons, and a digital scale. The $11,831 was located in close proximity to rolling papers, grinders, and additional indicia of drug usage.

"While in Officer Walters' police vehicle Mr. Baez states the marijuana in the trunk of the vehicle (totaling 10.6 pounds) belongs to him. All of the substances were subsequently tested by the Sedgwick County Regional Forensic Science Center and tested positive for Marijuana containing tetrahydrocannabinol.

6

"Additionally, all parties stipulate that the Court shall adopt all testimony from the Denno and Motion to Suppress hearing conducted on March 14, 2023 into the record."

At the conclusion of the bench trial, the district court found Baez guilty based on evidence beyond a reasonable doubt on both remaining charges. At sentencing, the district court imposed a 92-month prison sentence, but it granted Baez' request for a dispositional departure and ordered him to serve probation for 36 months.

Baez timely appeals from the district court's denial of the motion to suppress and the sufficiency of evidence for his criminal acquisition of drug proceeds conviction.

ANALYSIS

I.    *The district court did not err in denying Baez' motion to suppress.*

Baez argues that the district court erred in denying his motion to suppress based on his claim that the law enforcement officers lacked reasonable suspicion justifying a stop of his vehicle. Specifically, he claims that his vehicle passed by the officers at nearly 30 miles per hour, and the "transitory opportunity" to smell the odor of marijuana did not provide reasonable suspicion to conduct a traffic stop.

   A. *Our standard of review is substantial competent evidence regarding the district court's factual findings and de novo review of the court's legal conclusions.*

The standard of review for a district court's decision on a motion to suppress has two parts. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion, however, is reviewed using a de novo standard. *State v. Cash*, 313 Kan. 121,

125-26, 483 P.3d 1047 (2021). Additionally, when the material facts supporting a district court's decision on a motion to suppress are not in dispute—as in this case—the legal conclusions are questions of law over which this court has unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The burden rests with the State to prove the lawfulness of the warrantless search and seizure. K.S.A. 22-3216(2). In reviewing a district court's decision on a motion to suppress, the appellate court will not reweigh evidence or access the credibility of the witnesses. *Hanke*, 307 Kan. at 827.

B. *The law relating to traffic stops is clear.*

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures by law enforcement. A traffic stop is considered a seizure of the driver. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015).

To comply with constitutional protections, the officer conducting the traffic stop and detention must "'have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime.'" *Pianalto*, 301 Kan. at 1011; see K.S.A. 22-2402(1); *State v. Jimenez*, 308 Kan. 315, 323, 420 P.3d 464 (2018). What is reasonable in each case "'depends on the totality of circumstances in the view of a trained law enforcement officer.'" *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). Accordingly, the appellate courts assess a determination of reasonable suspicion under the totality of circumstances. *Kansas v. Glover*, 589 U.S. 376, 386, 140 S. Ct. 1183, 206 L. Ed. 2d 412 (2020).

To meet the constitutional requirement of reasonable suspicion, the law enforcement officer "'must be able to point to specific and articulable facts which, taken

together with rational inferences from the facts, reasonably warrant that intrusion.'" *State v. Sanders*, 310 Kan. 279, 286, 445 P.3d 1144 (2019) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). Notably, reasonable suspicion is compared to a "'minimum level of objective justification'" and is considerably less than proof by a preponderance of the evidence. *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). Reasonable suspicion is also a lower standard than probable cause. *Sharp*, 305 Kan. at 1081; see *Navarette v. California*, 572 U.S. 393, 397, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014) (reasonable suspicion is more than a mere hunch, but considerably less than a preponderance of the evidence and probable cause).

When an analysis of a motion to suppress requires examination of the search and the seizure, determining the legality of the seizure is the first step because the illegality of the detention can taint a subsequent search. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). Here, the legality of the stop is the only issue Baez challenges on appeal regarding the motion to suppress. In considering whether reasonable suspicion exists, the court should consider the officer's conduct "in light of common sense and ordinary human experience under the totality of the circumstances." *Sharp*, 305 Kan. at 1081.

C. *We apply the facts of this case to the aforementioned legal standards.*

Baez argues that this case is unique because there are no Kansas cases that address the standards when an officer smells marijuana from a moving car. Baez acknowledges that the odor of marijuana emanating from a parked car or from a car that has been stopped by police for some other reason has been found to be sufficient to support a finding of reasonable suspicion. He cites cases from a few other states that suggest they do not accept the odor of marijuana coming from a moving vehicle to be sufficient to justify a traffic stop and search.

9

In essence, Baez wants this court to find that, as a matter of law, the odor of marijuana coming from a moving vehicle cannot support a traffic stop. Baez does not challenge the district court's factual findings, nor does he argue that the search of his vehicle was not based on probable cause. As such, he has abandoned those claims. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (An issue not briefed is deemed waived or abandoned.).

To meet its burden of establishing the lawfulness of the stop, the State presented the testimony of Officers Walters and Faulker. At the evidentiary hearing, the officers testified:

1. They were standing on the side of a narrow residential street when the Chrysler drove past them. One officer was within 10 to 15 feet of the Chrysler as it passed.
2. The Chrysler was traveling at a fairly slow rate of speed and under the speed limit of 30 miles per hour.
3. The passenger window was part-way down.
4. "[T]he odor was pungent as [the Chrysler] drove by." It was "a very strong odor of green marijuana," and "it was an overwhelming odor" as the Chrysler passed. The odor then "dissipated" as the car went down the road away from where the officers were standing.
5. There were no other cars on the roadway, no individuals walking along the street, and no odor of marijuana prior to the arrival of the Chrysler. It was "very obvious" that the odor of marijuana was coming from the vehicle. They had no reason to believe the odor was coming from anywhere other than the Chrysler.
6. They both had extensive training and experience in drug detection.
7. The stop of Baez' vehicle was based solely on their belief that Baez was committing a crime. This belief was based on the fact that both officers

10

simultaneously smelled the odor of marijuana as Baez drove by them at a slow rate of speed.

Baez' focus is on the fact that the vehicle in this case was moving. He acknowledges that Kansas appellate courts have found reasonable suspicion to detain a defendant or even have found the higher standard of probable cause to search when an officer has detected the odor of marijuana from a parked vehicle. See *State v. MacDonald*, 253 Kan. 320, 324-26, 856 P.2d 116 (1993) (officer detecting the odor of marijuana coming from a vehicle during a checklane stop on the interstate provides probable cause to search the vehicle); *State v. Goff*, 44 Kan. App. 2d 536, 539, 239 P.3d 467 (2010) (officer smelled the odor of marijuana during traffic stop which provided probable cause to search); *In re J.M.E.*, 38 Kan. App. 2d 229, 235, 162 P.3d 835 (2007) (odor of marijuana coming from a parked car, which an officer detected after an occupant rolled down the window—provides reasonable suspicion to support an investigatory detention).

Similarly, our Supreme Court has found that the odor of marijuana coming from a residence can supply probable cause—a higher standard than reasonable suspicion—to search the residence based on the specific circumstances of the case. See *State v. Hubbard*, 309 Kan. 22, Syl. ¶ 5, 430 P.3d 956 (2018); *State v. Regelman*, 309 Kan. 52, 61, 430 P.3d 946 (2018) (totality of circumstances surrounding a law enforcement officer's detection of the odor of raw marijuana emanating from a residence can supply probable cause to search the residence). In both *Hubbard* and *Regelman*, our Supreme Court pointed to the following factors as relevant to the determination of whether probable cause to search existed under the totality of the circumstances:  the officer's proximity to the odor, the reported strength of the odor, the officer's experience in identifying the odor, elimination of other possible sources of the odor, and the number of witnesses testifying to the odor's presence. *Hubbard*, 309 Kan. at 40-41; *Regelman*, 309 Kan. at 61.

Baez relies on cases from other jurisdictions in which a court found the odor of marijuana alone did not supply reasonable suspicion for a stop. In *United States v. Gray*, 548 F. Supp. 3d 807, 813 (S.D. Ind. 2021), the United States District Court of Indiana granted the defendant's motion to suppress after the officer testified that he stopped the defendant's moving vehicle based on the odor of marijuana coming from the vehicle while he followed it in his own patrol car. The officer could not recall whether the windows were cracked or rolled down, and the State claimed the odor could have entered the patrol car's ventilation system as it followed the defendant's vehicle. In addition, other vehicles were in the area as the officer followed the defendant. Under these circumstances, the United States District Court found the officer's testimony lacked credibility and suppressed the evidence. 548 F. Supp. 3d at 813-14.

The evidence in the present case regarding the reliability of the officers' testimony is much stronger than in *Gray*. In this case, two officers both smelled a strong odor of marijuana as a single car with a cracked window passed within 10 to 15 feet of where they were standing in a residential area. Their testimony was much more believable than a single officer's claim that he smelled the odor of marijuana while in his patrol car as he followed the defendant with other vehicles in the area. This case demonstrates why a determination of reasonable suspicion should be made on a case-by-case basis, as the district court properly did here.

In addition, Baez cites to *Commonwealth v. Rodriguez*, 472 Mass. 767, 778, 37 N.E.3d 611 (2015), in which the Massachusetts Supreme Court opined: "[W]e are disinclined to extend the rule that allows vehicle stops based on reasonable suspicion of a civil motor vehicle offense to stops to enforce the civil penalty for possession of one ounce or less of marijuana. Such stops are unreasonable." At the time of the stop, possession of marijuana was no longer a crime in Massachusetts but instead carried only a civil penalty. In contrast, at the time of Baez' stop in Wichita, Kansas, possession of marijuana was a crime. This case provides little persuasive weight.

12

Next, Baez suggests that since marijuana is legal in other states, the odor may have been left over from a legal possession. At the evidentiary hearing, defense counsel asked Officer Walters whether he knew how long the vehicle smelled like raw marijuana prior to the stop and suggested that the odor may have been from the legal possession of marijuana in a nearby state. The officer responded that he did not know where the vehicle had been prior to the stop or how long it had smelled of raw marijuana. The district court considered this testimony in determining whether the officer had reasonable suspicion that Baez was committing a crime in Kansas.

Even though the majority of states have legalized marijuana, Kansas caselaw does not indicate that our Supreme Court has reversed legal precedent that the odor of marijuana can provide reasonable suspicion or probable cause that a crime is being committed in Kansas. See *Hubbard*, 309 Kan. 22, Syl. ¶ 5. The Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022).

Under the circumstances in this case, the State met its burden to show that the officers had reasonable suspicion to suspect that the driver of the vehicle was committing a crime. The fact that the vehicle was moving was only one factor that the district court needed to consider regarding credibility and reliability in making its determination of whether the officers had reasonable suspicion for the stop. The officers were very sure that the odor of marijuana was coming from the car, which was traveling at a slow speed. The details provided and the certainty in their testimony—coupled with the circumstances present on the residential street—that the marijuana was not coming from any other source provides specific and articulable facts needed to support a finding of reasonable suspicion. Here, we find the officers both pointed "'to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Sanders*, 310 Kan. at 286. If they did smell the odor of marijuana coming

13

from the car, they had a reasonable suspicion sufficient to justify a traffic stop. The district court found their testimony credible. This court does not reweigh credibility determinations. *Hanke*, 307 Kan. at 827.

The strong and distinct odor coming from Baez' vehicle provided circumstances leading to reasonable suspicion of criminal activity. *State v. Stevenson*, 299 Kan. 53, 58-59, 321 P.3d 754 (2014) (The odor of marijuana is evidence of illegal activity.); *Goff*, 44 Kan. App. 2d at 539-40 (The odor of raw marijuana alone is sufficient to give an officer reasonable suspicion and probable cause to search.). As such, the district court did not err in denying Baez' motion to suppress.

II.      *The State did not present sufficient evidence to sustain a conviction for proceeds derived from violations of drug laws.*

Next, Baez claims there was insufficient evidence to support his conviction for criminal acquisition of drug proceeds derived from violations of drug laws because the facts presented by the State in the stipulated facts did not prove a required element. As charged, the State was required to prove that Baez acquired the money from a separate drug transaction. See *State v. McGrew*, 29 Kan. App. 2d 1051, Syl. ¶ 3, 36 P.3d 334 (2001), *cert. denied* 537 U.S. 1058 (2002).

Baez was charged under K.S.A. 21-5716(a), which prohibits criminal acquisition of drug proceeds derived from violations of drug laws. The subsection of the statute under which he was charged provides: "It shall be unlawful for any person to receive or acquire proceeds or engage in transactions involving proceeds, known to be derived from a violation of K.S.A. 21-5701 through 21-5717, and amendments thereto, or any substantially similar offense from another jurisdiction." K.S.A. 21-5716(a). To present sufficient evidence to sustain a conviction, the State needed to present evidence that Baez received, acquired, or engaged in a transaction involving proceeds known to be derived

14

from the crime of possession of marijuana with intent to distribute. See *McGrew*, 29 Kan. App. 2d 1051, Syl. ¶ 3.

The State concedes that it presented insufficient evidence to sustain the conviction for criminal acquisition of drug proceeds, and the record confirms the State's concession. Accordingly, we are required to reverse his conviction and vacate the sentence for that crime. However, a remand for resentencing is unnecessary because the sentence for the conviction for criminal acquisition of drug proceeds was ordered to run concurrent with the sentence on the primary count. See *State v. Guder*, 293 Kan. 763, Syl. ¶ 3, 267 P.3d 751 (2012). Thus, reversal of the conviction does not affect Baez' overall sentence and a remand for resentencing is not needed.

Affirmed in part and reversed in part.